## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CONEXANT SYSTEMS, INC., *et al.*,[1] | Case No. 13-10367 (MFW) |
| Debtors. | Jointly Administered |
| | Related to Docket No. 5 |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(C), 363(E), 364 AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, AND (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES**

Upon the motion dated February 28, 2013 (the "DIP Motion") of Conexant Systems, Inc.

("Conexant") and its affiliated debtors, each as a debtor and debtor in possession (collectively

with Conexant, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), pursuant

to sections 105, 361, 362, 363(b), 363(c)(2), 363(e), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1),

364(e) and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001,

and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local

Bankruptcy Rules (the "Local Rules") of the United States Bankruptcy Court for the District of

Delaware (the "Bankruptcy Court"), seeking, among other things:[2]

      (a)     authorization for Conexant, in its capacity as borrower (the "Borrower"),

to obtain postpetition financing and for each of the other Debtors to guarantee

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Conexant Systems, Inc. (9439); Brooktree Broadband Holding, Inc. (5436); Conexant CF, LLC (6434); Conexant, Inc. (8218); Conexant Systems Worldwide, Inc. (0601). The Debtors' main corporate address is 4000 MacArthur Blvd., Newport Beach, California 92660.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the DIP Motion.

unconditionally (the "Guarantors"), on a joint and several basis, the Borrower's obligations in connection with the DIP Facility (as defined below), consisting of a senior secured superpriority delayed draw term loan facility in an aggregate principal amount of up to $15,000,000 (the "DIP Facility" and the loans thereunder, the "DIP Loans"), subject to the terms and conditions hereof, and as set forth in the DIP Documents (as defined below);

(b)    authorization for the Debtors to enter into that certain Senior Secured Superpriority Debtor-In-Possession Credit Agreement among the Borrower, the Guarantors, and QP SFM Capital Holdings Ltd. as lender (in such capacity, the "DIP Lender") (as amended, restated or otherwise modified from time to time in accordance with the terms thereof, the "DIP Credit Agreement" and, together with all agreements, documents, and instruments delivered or executed in connection therewith, the "DIP Documents"), and to perform such other and further acts as may be required in connection with the DIP Documents;

(c)    authorization for the Debtors to use the DIP Loans, and the proceeds thereof, and Cash Collateral (as defined below) to provide working capital for, and for other general corporate purposes of, the Debtors, including for payments authorized by order of the Bankruptcy Court and for interest, fees and expenses in connection with the DIP Loans and any adequate protection obligations as set forth herein;

(d)    the granting of adequate protection to the holders (collectively, the "Prepetition Noteholders") of the 11.25% Senior Secured Notes due 2015 (the "Prepetition Secured Notes") issued pursuant to that certain Indenture (as amended, restated, supplemented or otherwise modified, the "Prepetition Secured Notes Indenture"

2

and, together with all other loan and security documents executed in connection therewith, the "Prepetition Indenture Documents") dated as of March 10, 2010 by and among Conexant and certain of its subsidiaries and The Bank of New York Mellon Trust Company, N.A. as Trustee and Collateral Trustee (in such capacity, the "Prepetition Indenture Trustee"), whose liens and security interests are being primed by the DIP Loans;

(e)     authorization for the Debtors to use Cash Collateral (as defined below) in which the Prepetition Noteholders and the Prepetition Indenture Trustee (collectively, the "Adequate Protection Parties") are granted an interest hereunder;

(f)     the granting of valid, enforceable, non-avoidable and fully perfected first priority priming liens on and senior security interests in all of the property, assets and other interests in property and assets of the Debtors, whether such property is presently owned or after-acquired, and all other "property of the estate" (within the meaning of the Bankruptcy Code) of the Debtors, of any kind or nature whatsoever, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created, whether existing prior to or arising after the Petition Date (as defined below), including proceeds of Avoidance Actions (as defined below), subject only to the Carve-Out (as defined below) on the terms and conditions set forth herein and in the DIP Documents;

(g)     the granting of superpriority administrative expense claims to the DIP Lender pursuant to Bankruptcy Code section 364(c)(1) with respect to the DIP Obligations (as defined below) over any and all administrative expenses of any kind or nature including, without limitation, the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 and 1114,

3

subject and subordinate only to the payment of the Carve-Out on the terms and conditions set forth herein and in the DIP Documents; and

 (h) subject to entry of this Final Order, the limitation of the Debtors' and the estates' right to surcharge against or recover from the DIP Collateral (as defined below) or the Senior Secured Notes Collateral pursuant to Bankruptcy Code section 506(c), 552(b), 105(a) or any similar principle of law.

Due and appropriate notice of the DIP Motion, the relief requested therein, the Interim Hearing and the Final Hearing (each as defined below) having been served by the Debtors on, among others: (a)(i) the Debtors, 4000 MacArthur Blvd., Newport Beach, California 92660, Attn: Dennis Gallagher, Esq.; (ii) proposed counsel for the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, Esq.; and (iii) proposed co-counsel for the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, Delaware 19801, Attn: Domenic E. Pacitti, Esq.; (b)(i) counsel to the Prepetition Noteholders and the DIP Lender, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: Michael S. Stamer, Esq. and Meredith A. Lahaie, Esq. and (ii) co-counsel to the Prepetition Noteholders and the DIP Lender, Pepper Hamilton LLP, Attn: David Stratton, Esq. and David Fournier, Esq., Hercules Plaza, Suite 5100, 1313 N. Market Street, Wilmington, DE 19801; (c) counsel to certain of the prepetition equity holders, DLA Piper, 203 North LaSalle Street, Suite 1900, Chicago, Illinois 60601, Attn: Chris L. Dickerson, Esq.; (d) the office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Tiiara N. A. Patton, Trial Attorney; (e)(i) proposed counsel to the official committee of unsecured creditors (the "Committee"), Kelley Drye & Warren LLP,

4

101 Park Avenue, New York, NY 10178, Attn: James S. Carr, Esq., Robert L. LeHane, Esq. and Craig A. Wolfe, Esq. and (ii) proposed co-counsel to the Committee, Womble Carlyle Sandridge & Rice, LLP, 222 Delaware Avenue, Suite 1501, Wilmington, DE 19801 Attn: Kevin J. Mangan, Esq. and Matthew P. Ward, Esq.; (f) the Securities and Exchange Commission; (g) the United States Attorney's Office; (h) the Delaware Attorney General; (i) the Internal Revenue Service; and (j) the Prepetition Indenture Trustee (collectively, the "Notice Parties") in compliance with Bankruptcy Rules 4001(b) and (c) and the Local Rules;

An interim hearing on the DIP Motion (the "Interim Hearing") having been held by this Court on March 1, 2013, and this Court having entered an interim order (the "Interim Order") dated March 1, 2013 [Docket No. 44] which, among other things, (a) authorized the Borrower, on an interim basis, to borrow from the DIP Lender under the DIP Documents up to an aggregate principal amount not to exceed $5 million (subject to any limitations of borrowing under the DIP Documents and in accordance with the Budget (as defined in the DIP Credit Agreement)), (b) authorized the Guarantors to guaranty the DIP Obligations, (c) granted the adequate protection described in the Interim Order; and (d) and scheduling a final hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") authorizing the balance of DIP Financing under the DIP Documents on a final basis, as set forth in the DIP Motion and the DIP Documents, for April 19, 2013 at 11:30 a.m. (ET);

The Debtors having filed a notice of the Final Hearing dated March 1, 2013; and due and appropriate notice under the circumstances of the DIP Motion and the relief requested therein, and such notice having been served by the Debtors on the Notice Parties; and

Upon the record made by the Debtors and other parties in interest at the Interim Hearing and at the Final Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:**

1.     *Disposition.*  The DIP Motion is granted on a final basis in accordance with the terms of this Final Order.  Any objections to the DIP Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, and all reservation of rights included therein, are hereby denied and overruled.  This Final Order shall become effective immediately upon entry.

2.     *Jurisdiction.*  This Court has core jurisdiction over the Chapter 11 Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and rule predicates for the relief granted herein are Bankruptcy Code sections 105, 107(b), 361, 362, 363, 364 and 507 and Bankruptcy Rules 2002, 4001, 6003, 6004, 9013, and 9018 and the Local Rules.

3.     *Notice.*  Under the circumstances, the notice given by the Debtors of the DIP Motion, the relief requested therein, the Interim Hearing, the Interim Order and the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and the Local Rules, and no further notice of the relief sought at the Final Hearing and the relief granted herein is necessary or required.

4.     *Debtors' Stipulations.*  Without prejudice to the rights of any other party (but subject in all respects to the limitations thereon contained in paragraph 20 below), the Debtors admit, stipulate and agree that:

(a)     As of the date of the commencement of the Chapter 11 Cases (the "Petition Date"), the Debtors were party to or otherwise obligated under the Prepetition Secured Notes Indenture, without defense, counterclaim or offset of any kind, and were indebted and liable to the Prepetition Noteholders for the Prepetition Secured Notes in the aggregate principal amount of $175,000,000, exclusive of accrued and unpaid interest, premium, if any, and certain fees, costs, expenses, charges and all other obligations incurred in connection therewith (including, without limitation, attorneys' fees, related expenses and disbursements) as provided by the Prepetition Secured Notes Indenture (collectively, the "Prepetition Secured Debt").

(b)     The Prepetition Secured Debt constitutes the legal, valid and binding obligations of the Debtors as set forth in the Prepetition Secured Notes Indenture, enforceable in accordance with the terms of the Prepetition Secured Notes Indenture and documents related thereto.

(c)     No portion of the Prepetition Secured Debt or any payment made to the Prepetition Indenture Trustee or the Prepetition Noteholders or applied to obligations owing under the Prepetition Secured Notes Indenture prior to the Petition Date is subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as such term is defined in the Bankruptcy Code), or otherwise, of any kind pursuant to the Bankruptcy Code or other applicable law.

(d)     Each Debtor hereby forever waives and releases any and all "claims" (as such term is defined in the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights against the Adequate Protection Parties, whether arising at law or in equity, including any recharacterization, subordination, avoidance, lender liability or other claim arising under or pursuant to the Bankruptcy Code or under any other applicable state or federal law.

7

(e)     The Prepetition Secured Debt is secured by the Senior Secured Notes Collateral (as defined in the DIP Credit Agreement). The security interests granted to the Prepetition Indenture Trustee, for the benefit of the Prepetition Noteholders, in the Senior Secured Notes Collateral (collectively, the "Prepetition Security Interests") pursuant to the Prepetition Indenture Documents are (i) valid, binding, perfected and enforceable liens and security interests in the real and personal property described in the Prepetition Indenture Documents, (ii) not, pursuant to the Bankruptcy Code or other applicable law, subject to avoidance, recharacterization, recovery, subordination, attachment, offset, counterclaim, defense or "claim" (as such term is defined in the Bankruptcy Code) of any kind, and (iii) subject to the Carve-Out, DIP Liens and Superpriority Claims (as defined below).

5.     *Findings Regarding the DIP Facility.*

Based on the record at the Final Hearing:

(a)     Good cause has been shown for the entry of this Final Order.

(b)     The Debtors need to obtain the full amount of the DIP Loans and to use the Cash Collateral to, among other things: (i) permit the orderly continuation of their businesses; (ii) maintain business relationships with vendors, suppliers, carriers, and customers of the Debtors; (iii) make critical vendor payments and satisfy ongoing business expenses, including payroll; and (iv) pay the costs of administration of their estates and satisfy other working capital and general corporate purposes of the Debtors. The ability of the Debtors to obtain sufficient working capital and liquidity through the incurrence of the new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Debtors and to the Debtors' successful reorganization.

104456393 v2

(c)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lender under the DIP Documents and are unable to obtain adequate unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors are also unable to obtain secured credit allowable under Bankruptcy Code sections 364(c)(1), 364(c)(2), and 364(c)(3) for the purposes set forth in the DIP Documents without the Debtors granting to the DIP Lender, subject to the Carve-Out as provided for herein, the DIP Liens (defined below) and the Superpriority Claims (as defined below) under the terms and conditions set forth in the Interim Order, this Final Order and the DIP Documents.

(d)     The terms of the DIP Facility, the DIP Documents and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Facility has been negotiated in good faith and at arm's length between the Debtors and the DIP Lender, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility and the DIP Documents including, without limitation, all DIP Loans made to and guarantees issued by the Debtors pursuant to the DIP Documents and all other obligations under the DIP Documents (collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Lender in good faith as that term is used in Bankruptcy Code section 364(e) and in express reliance upon the protections offered by Bankruptcy Code section 364(e), and the DIP Obligations, the DIP Liens and the Superpriority Claims shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

(f)     Absent granting the relief sought by this Final Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Facility and authorization of the use of the Senior Secured Notes Collateral and the Cash Collateral in accordance with this Final Order and the DIP Documents are, therefore, in the best interests of the Debtors' estates and are consistent with the Debtors' fiduciary duties.

6.      *Authorization of the DIP Facility and the DIP Documents.*

(a)     The Debtors were by the Interim Order and hereby are expressly authorized and empowered to execute and deliver and, on such execution and delivery, perform under the DIP Documents, including the DIP Credit Agreement, which is hereby approved and incorporated herein by reference.

(b)     The Borrower was by the Interim Order and hereby is authorized to borrow the amount authorized under and pursuant to the DIP Credit Agreement, and the Guarantors were by the Interim Order and hereby are authorized to guaranty such borrowings. In accordance with the terms of this Final Order and the DIP Credit Agreement, proceeds of the DIP Loans shall be used solely for the purposes permitted under the DIP Credit Agreement, this Final Order and in accordance with the Budget (as defined in the DIP Credit Agreement), plus permitted variances as set forth in the DIP Documents.

(c)     In furtherance of the foregoing and without further approval of this Court, each Debtor was by the Interim Order and hereby is authorized, and the automatic stay imposed by Bankruptcy Code section 362 is hereby lifted to the extent necessary, to perform all acts and to make, execute and deliver all instruments and documents (including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage contemplated thereby),

10

and to pay all fees that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facility including, without limitation:

  (i)  the execution, delivery and performance of the DIP Documents, including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage contemplated thereby;

  (ii)  the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents for, among other things, the purpose of adding additional entities as DIP Lenders, in each case in such form as the Debtors and the DIP Lender may reasonably agree, it being understood that no further approval of the Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents or the DIP Obligations that do not shorten the maturity of the extensions of credit thereunder or increase the commitments or the rate of interest payable thereunder; provided that the Debtors provide counsel to the Committee and the U.S. Trustee with written notice of any such amendment, waiver, consent or modification;

  (iii)  the non-refundable payment to the DIP Lender of the fees referred to in the DIP Credit Agreement, and reasonable and documented costs and expenses in accordance with the DIP Credit Agreement, including, without limitation, fees and expenses of counsel, consultants and advisors retained as provided for in the DIP Credit Agreement, whether incurred before or after the Petition Date, which such fees and expenses shall not be subject to the approval of the Court, nor shall any recipient of any such payment be required to file with

11

respect thereto any interim or final fee application with the Court; *provided, however*, that the Debtors shall send copies of such invoices to the U.S. Trustee and the Committee within two (2) business days from receipt thereof, and the U.S. Trustee and the Committee shall have ten (10) days from receipt thereof to object in writing to the reasonableness of such invoices. To the extent that the U.S. Trustee or the Committee so objects to any such invoices, the Debtors shall remit payment on account of the portion of such invoices to which there has been no objection, and payment of the allegedly unreasonable portion of such invoices will be subject to review by the Bankruptcy Court; *provided further, however*, if applicable, that such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or any benefits of the attorney work product doctrine;

(iv)    make the Adequate Protection Payments (as defined below) provided for in this Final Order; and

(v)    the performance of all other acts required under or in connection with the DIP Documents.

(d)    The DIP Credit Agreement and the other DIP Documents shall constitute valid, binding and non-avoidable obligations of the Debtors enforceable against each Debtor party thereto in accordance with their respective terms and the terms of this Final Order for all purposes during the Chapter 11 Cases, any subsequently converted Chapter 11 Case of any Debtor to a case under chapter 7 of the Bankruptcy Code or after the dismissal of any Chapter 11

12

Case. No obligation, payment, transfer or grant of security under the DIP Credit Agreement, the other DIP Documents or this Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under Bankruptcy Code sections 502(d), 548 or 549 or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

(e)     The Guarantors were by the Interim Order and hereby are authorized and directed to jointly, severally and unconditionally guarantee in full all of the DIP Obligations of the Borrower.

7.     *Superpriority Claims.* Pursuant to Bankruptcy Code section 364(c)(1), all of the DIP Obligations shall constitute allowed senior administrative expense claims against each of the Debtors (the "Superpriority Claims") (without the need to file any proof of claim) with priority over any and all administrative expenses, adequate protection claims, diminution claims (including all Adequate Protection Obligations (as defined below)) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b), and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for the purposes of Bankruptcy Code section 1129(a)(9)(A) be considered administrative expenses allowed under Bankruptcy Code section 503(b) and which shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, any

proceeds or property recovered in connection with the pursuit of claims or causes of action arising under chapter 5 of the Bankruptcy Code, if any (the "Avoidance Actions"), subject only to the payment of the Carve-Out to the extent specifically provided for herein. Unless otherwise ordered by the Court, except as set forth in this Final Order, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases.

8.       *Carve-Out.* "Carve-Out" means: (a) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in (b) below) as determined by agreement of the U.S. Trustee or by final order of the Court and (b) to the extent allowed at any time, whether by interim order, procedural order or otherwise, all unpaid fees, disbursements, costs and expenses (collectively, the "Professional Fees") incurred by professionals or professional firms (collectively, the "Professional Persons") retained by the Debtors pursuant to Bankruptcy Code sections 327 and 363 and the Committee (i) at any time before or on the first business day following delivery by the DIP Lender of a Carve-Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice, and (ii) after the first business day following delivery by the DIP Lender of the Carve-Out Trigger Notice, the payment of Professional Fees of Professional Persons in an aggregate amount not to exceed $500,000 (the "Post Carve-Out Trigger Notice Cap"). "Carve-Out Trigger Notice" means written notice delivered by the DIP Lender to the Debtors and their lead counsel, the U.S. Trustee, and lead counsel to the Committee, which notice may be delivered following the occurrence of a Default or an Event of Default (in each case, as defined in the DIP Credit Agreement) under the DIP Documents, stating that the Post Carve-Out Trigger Notice Cap has been invoked.    For the avoidance of doubt and

notwithstanding anything to the contrary herein, in the DIP Documents or in the Prepetition Indenture Documents, the Carve-Out shall be senior to all liens and claims securing the DIP Obligations, the Adequate Protection Obligations and the Prepetition Secured Debt.

9.    *DIP Liens.* As security for the DIP Obligations, effective and perfected upon the date of the Interim Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Lender of, or over, any DIP Collateral (as defined below), the following security interests and liens were by the Interim Order and hereby are granted by the Debtors to the DIP Lender (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "DIP Collateral"), subject to the payment of the Carve-Out (all such liens and security interests granted to the DIP Lender, pursuant to the Interim Order, this Final Order and the DIP Documents, the "DIP Liens"):

(a)    First Lien on Cash Balances and Unencumbered Property.    Pursuant to Bankruptcy Code section 364(c)(2), a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien upon all prepetition and postpetition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, "Other Assets"), including without limitation, any unencumbered cash of the Debtors (whether maintained with the DIP Lender or otherwise) and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual

property, equity interests (other than Excluded Equity, as such term is defined in the DIP Credit Agreement), and the proceeds of all the foregoing. Other Assets shall also include any proceeds or property recovered in connection with the pursuit of the Avoidance Actions.

(b)    Liens Priming Prepetition Noteholders' Liens.    Pursuant to Bankruptcy Code section 364(d)(1), a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all prepetition and postpetition property of the Debtors (including, without limitation, inventory, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, equity interests, and the proceeds of all the foregoing), whether now existing or hereafter acquired, that is subject to any existing lien presently securing the Prepetition Secured Debt. Such security interests and liens shall be senior in all respects to the interests in such property of the Adequate Protection Parties arising from current and future liens of the Adequate Protection Parties (including, without limitation, adequate protection liens granted under the Interim Order and hereunder), but shall be junior to any valid, perfected, enforceable and unavoidable security interests and liens of other parties, if any, on such property existing immediately prior to the Petition Date which were senior to the liens securing the Prepetition Secured Debt, or to any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of the Adequate Protection Parties may become subject subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b).

(c)    Liens Junior to Certain Other Liens.    Pursuant to Bankruptcy Code section 364(c)(3), a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all prepetition and postpetition property of the Debtors (other than (1) the property described in clauses (a) or (b) of this paragraph 9, as to which the liens and security interests in

favor of the DIP Lender will be as described in such clauses, and (2) Excluded Equity, as such term is defined in the DIP Credit Agreement), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date that are senior to the liens securing the Prepetition Secured Debt or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b) that are senior to the liens securing the Prepetition Secured Debt, which security interests and liens in favor of the DIP Lender are junior to such valid, perfected and unavoidable liens.  Subject to any further Bankruptcy Court Order and notwithstanding anything contrary contained herein, no liens or other rights or interests granted or permitted under this Final Order shall impair, be senior to, or in any way prime the liens and right of setoff of Comerica Bank under the following agreements between Comerica Bank and Conexant Systems, Inc.:

      (i)      Standby Letter of Credit Application and Agreement dated December 5, 2005 and Security Agreement dated December 5, 2005 relating to letter of credit No. 615453 for the benefit of NAEH Scranton Road, LLC c/o GBAM, Inc.;

      (ii)      Standby Letter of Credit Application and Agreement dated April 30, 2008 and Security Agreement dated May 1, 2008 relating to letter of credit No. 635577 for the benefit of Self Insurance Plans of California;

      (iii)      Standby Letter of Credit Application and Agreement and Pledge Agreement dated January 14, 2010 relating to letter of credit No. 644789 for the benefit of San Diego Gas Electric Company;

      (iv)      Standby Letter of Credit Application and Agreement dated September 24, 2004 and Security Agreement dated September 27, 2004 relating to letter of credit No. 595628 for the benefit of Southern California Edison Company; and

      (v)      Standby Letter of Credit Application and Agreement and Pledge Agreement dated January 27, 2011 relating to letter of credit No. 650154 for the benefit of Stony Brook Associates c/o Boston Properties LP (collectively, the "Comerica Agreements");

pursuant to which Conexant Systems, Inc. pledged funds in that certain Business Money Market Account No. 1851-480234 in the name of Conexant Systems, Inc. maintained at Comerica Bank (the "Comerica Account") and all identifiable proceeds of the Comerica Account, which total $4,173,584.08 as of the Petition Date, plus post-petition interest accruing on the Comerica Account, which funds shall continue to secure the reimbursement obligations of Conexant Systems, Inc. to Comerica Bank under the Comerica Agreements or otherwise, for any draws under: (1) Letter of Credit No. 615453 in the amount of $3,000,000.00 issued for the benefit of NAEH Scranton Road, LLC c/o GBAM, Inc., (2) Letter of Credit No. 635577 in the amount of $953,450.00 issued for the benefit of Self Insurance Plans of California, (3) Letter of Credit No. 644789 in the amount of $110,000.00 issued for the benefit of San Diego Gas & Electric Company; (4) Letter of Credit No. 595628 in the amount of $35,715.00 issued for the benefit of Southern California Edison Company and (5) Letter of Credit No. 650154 in the amount of $45,918.75 issued for the benefit of Stony Brook Associates c/o Boston Properties LP.

(d)    Liens Senior to Certain Other Liens. Other than with respect to the Carve-Out, the quarterly fees payable to the U.S. Trustee, and any valid, perfected, and non-avoidable prepetition lien held by, or granted to, any other party, the DIP Liens and the Adequate Protection Liens (as defined below) shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code section 551, (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors, or (iii) any intercompany or affiliate liens of the Debtors.

10.    *Protection of DIP Lender's Rights.*

(a)    All DIP Collateral shall be free and clear of all liens, claims and encumbrances, except for those liens, claims and encumbrances expressly permitted under the DIP Documents or this Final Order.

(b)    Until all DIP Obligations (including any non-contingent claim for indemnification by the DIP Lender) shall have been indefeasibly paid in full in cash or otherwise satisfied in full (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid) and the commitments under the DIP Documents have terminated, the Adequate Protection Parties shall (i) take no action to foreclose upon or recover in connection with the liens granted thereto pursuant to the Prepetition Secured Notes Indenture, the Interim Order or this Final Order, or otherwise exercise remedies against any DIP Collateral, (ii) be deemed to have consented to any release of DIP Collateral authorized under the DIP Documents and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral unless, solely as to this clause (iii), the DIP Lender files financing statements or other documents to perfect the liens granted pursuant to the Interim Order or this Final Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests in effect as of the Petition Date.

(c)    The automatic stay provisions of Bankruptcy Code section 362 are vacated and modified to the extent necessary to permit the DIP Lender to exercise (i) immediately upon the occurrence of an Event of Default (subject to applicable grace periods) or the Maturity Date (as defined in the DIP Credit Agreement), all rights and remedies under the DIP Documents other than those rights and remedies against the DIP Collateral as provided in clause (ii) below and (ii)

upon the occurrence and during the continuance of an Event of Default (subject to any applicable grace periods) and the giving of five (5) business days' prior written notice to counsel to the Debtors, the Committee, the U.S. Trustee, and the Prepetition Indenture Trustee to the extent provided for in any DIP Document, all rights and remedies against the DIP Collateral provided for in any DIP Document (including without limitation, to the extent applicable, the right to set off against any accounts maintained by the Debtors with the DIP Lender or any affiliate thereof), provided that, upon the receipt of any such notice, the Borrower may only make disbursements with respect to the Carve-Out, but may not disburse any other amounts. In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors and the Adequate Protection Parties hereby each waive their right to seek relief, including, without limitation, under Bankruptcy Code section 105, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lender set forth in this Final Order or the DIP Documents. In no event shall the DIP Lender or the Adequate Protection Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the Cash Collateral or the Senior Secured Notes Collateral. The delay or failure to exercise rights and remedies under the DIP Documents, the Interim Order or this Final Order by the DIP Lender shall not constitute a waiver of the DIP Lender's rights hereunder, under the Interim Order, under the DIP Documents or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable DIP Documents.

11.    *Limitation on Charging Expenses Against Collateral.* Except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any future

proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Cash Collateral or the Senior Secured Notes Collateral pursuant to Bankruptcy Code sections 506(c) or any similar principle of law without the prior written consent of the DIP Lender or the Prepetition Indenture Trustee, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender, the Prepetition Indenture Trustee, or the Prepetition Noteholders.  Moreover, in light of their agreement to subordinate their liens and superpriority claims to the Carve-Out, the DIP Lenders and the Adequate Protection Parties shall be entitled to all benefits of Bankruptcy Code section 552(b) and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to such parties with respect to the proceeds, products, offspring, or profits of any of their collateral.

12.    *Cash Collateral.*  Effective upon entry of the Interim Order, to secure any claim arising from (a) the Adequate Protection Obligations and (b) the failure to make any Adequate Protection Payments required under the Interim Order or hereunder, the Prepetition Indenture Trustee is hereby granted, on behalf of itself and the Prepetition Noteholders, a replacement security interest in and lien upon all cash collateral as defined in the Bankruptcy Code ("Cash Collateral"), subject and subordinate only to (i) the Carve-Out and (ii) the liens securing the DIP Obligations.

13.    *Use of Cash Collateral.*  The Debtors are hereby authorized to use all Cash Collateral of the Adequate Protection Parties, but solely to the extent, and for the purposes, set forth in this Final Order and in accordance with the Budget (plus permitted variances as set forth in the DIP Documents) and the cash management system in effect as of the Petition Date described in Annex B to the DIP Credit Agreement, including, but not limited to, payment of

Professional Fees and to make Adequate Protection Payments provided for in the Interim Order and this Final Order.

14.  *Adequate Protection.*  The Adequate Protection Parties are entitled, pursuant to Bankruptcy Code sections 361, 363(e) and 364(d)(1), to adequate protection of their interests in the Senior Secured Notes Collateral for and equal in amount to the aggregate diminution in the value (each such diminution, a "Diminution in Value") of the Adequate Protection Parties' security interests in the Senior Secured Notes Collateral (which Diminution in Value shall be calculated in accordance with Bankruptcy Code section 506(a)) as a result of the Debtors' sale, lease or use of any Senior Secured Notes Collateral, the priming of the Prepetition Security Interests by the DIP Lender pursuant to the DIP Documents, the Interim Order and this Final Order, and the imposition of the automatic stay pursuant to Bankruptcy Code section 362.  As adequate protection, the Adequate Protection Parties were by the Interim Order and hereby are granted the following (collectively, the "Adequate Protection Obligations"):

(a)  Adequate Protection Liens.  As security for and solely to the extent of any Diminution in Value of the Prepetition Security Interests, the Prepetition Indenture Trustee (for itself and the benefit of the Prepetition Noteholders) was by the Interim Order and hereby is granted, effective and perfected upon the date of the Interim Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements, a replacement security interest in and lien upon all DIP Collateral including, for the avoidance of doubt, all Cash Collateral (together, the "Adequate Protection Liens"), subject and subordinate only to (i) the Carve-Out and (ii) the liens securing the DIP Obligations; *provided, however,* that with respect to Avoidance Actions, the Adequate Protection Liens shall attach only to proceeds or property recovered in connection with the

pursuit of Avoidance Actions against current vendors and suppliers; *provided further, however,* that the Debtors and the Committee shall not pursue any Avoidance Actions against any of such current vendors and suppliers without the express written consent of the Secured Lender.

(b)     Section 507(b) Claims.  To the extent of any Diminution in Value of the Prepetition Security Interests, the Adequate Protection Parties were by the Interim Order and hereby are granted, subject to the payment of the Carve-Out, allowed superpriority administrative expense claims (the "Adequate Protection Parties' Superpriority Claims") as provided for in Bankruptcy Code section 507(b), immediately junior to the claims under Bankruptcy Code section 364(c)(1) held by the DIP Lender; provided, however, that with respect to Avoidance Actions, the Adequate Protection Parties' Superpriority Claims may only be satisfied from the proceeds of Avoidance Actions pursued against current vendors and suppliers; provided further, however, that the Adequate Protection Parties shall not receive or retain any payments, property or other amounts in respect of the Adequate Protection Parties' Superpriority Claims under Bankruptcy Code section 507(b) granted pursuant to the Interim Order, this Final Order or the Prepetition Secured Notes Indenture unless and until the DIP Obligations have indefeasibly been paid in cash in full or as otherwise agreed by the DIP Lender or as provided in the DIP Documents.

(c)     Fees and Expenses.  The Prepetition Noteholders shall receive from the Debtors current cash payments of all reasonable and documented fees and expenses payable to the Prepetition Noteholders under the Prepetition Indenture Documents, including, but not limited to, reasonable and documented fees and expenses of counsel and financial advisors to the Prepetition Noteholders promptly upon receipt of invoices therefor (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing motions or fee

applications, including such amounts arising before and after the Petition Date; *provided, however*, that the Debtors shall send copies of such invoices to the U.S. Trustee and the Committee within two (2) business days from receipt thereof, and the U.S. Trustee and the Committee shall have ten (10) days from receipt thereof to object in writing to the reasonableness of such invoices. To the extent that the U.S. Trustee or the Committee so objects to any such invoices, the Debtors shall remit payment on account of the portion of such invoices to which there has been no objection, and payment of the allegedly unreasonable portion of such invoices will be subject to review by the Bankruptcy Court; *provided further*, however, if applicable, that such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or any benefits of the attorney work product doctrine. All amounts paid as adequate protection hereunder (collectively, the "Adequate Protection Payments") are deemed permitted uses and expenditures for purposes of the DIP Facility and are permitted uses of Cash Collateral.

(d)    Financial Reporting. The Debtors shall provide the Prepetition Indenture Trustee and the Prepetition Noteholders with financial and other reporting substantially in compliance with the DIP Credit Agreement and any reporting described herein and in the DIP Documents.

15.    *Additional Liens.* All intercompany/affiliate liens of the Debtors, if any (other than any liens securing the DIP Obligations), will be contractually subordinated to the DIP Obligations and to the Adequate Protection Obligations on terms satisfactory to the DIP Lender.

16.    *Reservation of Rights of Adequate Protection Parties.* Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code,

including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Adequate Protection Parties. However, any Adequate Protection Party may request further or different adequate protection, and the Debtors or any other party may contest any such request; _provided_ that any such further or different adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Lender granted under the Interim Order, this Final Order and the DIP Documents. Except as expressly provided herein, nothing contained in the Interim Order or this Final Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to any Adequate Protection Party or the DIP Lender.

17. *Perfection of the DIP Liens and Adequate Protection Liens.*

(a) Subject to the provisions of paragraph 10(b) above, the Debtors, the DIP Lender and the Prepetition Indenture Trustee are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them under the Interim Order or hereunder. Whether or not the DIP Lender and/or the Prepetition Indenture Trustee shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them under the Interim Order or hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge or dispute or subordination, at the time and on the date of entry of the Interim Order. Upon the request of the

DIP Lender and/or the Prepetition Indenture Trustee, without any further consent of any party, each Debtor is authorized to take, execute, deliver and file such instruments (in each case without representation or warranty of any kind) to enable the DIP Lender and/or the Prepetition Indenture Trustee to further validate, perfect, preserve and enforce the DIP Liens and the Adequate Protection Liens. The Debtors shall execute and deliver to the DIP Lender and the Prepetition Indenture Trustee all such agreements, financing statements, instruments and other documents as the DIP Lender and/or the Prepetition Indenture Trustee may reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens and the Adequate Protection Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)     A certified copy of this Final Order may, in the discretion of the DIP Lender or the Prepetition Indenture Trustee, as the case may be, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording.

(c)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign or otherwise transfer any such leasehold interests, or the proceeds thereof, or other postpetition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting postpetition liens, in any leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lender in accordance with

the terms of the DIP Documents, the Interim Order and this Final Order or in favor of the Adequate Protection Parties in accordance with the terms of the Prepetition Indenture Documents, the Interim Order and this Final Order.

18.    *Preservation of Rights Granted Under the Interim Order and this Final Order.*

(a)    No claim or lien having a priority superior to or *pari passu* with those granted by the Interim Order or this Final Order to the DIP Lender or the Adequate Protection Parties shall be granted or allowed while any portion of the DIP Loans (or any refinancing thereof), the commitments thereunder, the DIP Obligations or the Adequate Protection Obligations remain outstanding, and the DIP Liens and the Adequate Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551 or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under Bankruptcy Code section 364(d) or otherwise.

(b)    Unless (x) all DIP Obligations shall have indefeasibly been paid in cash in full or satisfied in a manner otherwise agreed to by the DIP Lender and (y) the Prepetition Secured Debt and Adequate Protection Obligations shall have been indefeasibly paid in cash in full or satisfied in a manner otherwise agreed to by the Prepetition Noteholders, the Debtors shall not seek, and it shall constitute an Event of Default and terminate the right of the Debtors to use Cash Collateral if any of the Debtors seek, or if there is entered, (i) any modification or extension of this Final Order without the prior written consent of the DIP Lender (or, to the extent the DIP Obligations shall have been indefeasibly paid in cash in full or satisfied in a manner otherwise agreed to by the DIP Lender, the Prepetition Indenture Trustee and the Prepetition Noteholders), and no such consent shall be implied by any other action, inaction or acquiescence, (ii) an order converting or dismissing any of the Chapter 11 Cases, (iii) an order appointing a chapter 11 trustee in any of

the Chapter 11 Cases or (iv) an order appointing an examiner with enlarged powers in any of the Chapter 11 Cases.

(c)    If an order dismissing any of the Chapter 11 Cases under Bankruptcy Code section 1112 or otherwise is at any time entered, such order shall provide (in accordance with Bankruptcy Code sections 105 and 349) that (i) the Superpriority Claims, DIP Liens, Adequate Protection Parties' Superpriority Claims and Adequate Protection Liens granted to the DIP Lender and the Adequate Protection Parties, as applicable, pursuant to the Interim Order or this Final Order shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in cash in full (or, with respect to the DIP Obligations, otherwise satisfied in a manner agreed to by the DIP Lender) and that such Superpriority Claims, DIP Liens, Adequate Protection Parties' Superpriority Claims and Adequate Protection Liens, shall, notwithstanding such dismissal, remain binding on all parties in interest and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above.

(d)    If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations. Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral and any DIP Obligations or Adequate Protection Obligations incurred by the Debtors to the DIP Lender or the Adequate Protection Parties, as applicable, prior to the actual receipt of written notice by the DIP Lender or the Prepetition Indenture Trustee, as applicable, of the effective date of such reversal, stay, modification or vacation of the validity or enforceability of any lien or

priority authorized or created hereby, under the Interim Order or pursuant to the DIP Credit Agreement with respect to any DIP Obligations or Adequate Protection Obligations incurred by the Debtors to the DIP Lender or the Adequate Protection Parties prior to the actual receipt of written notice by the DIP Lender or the Prepetition Indenture Trustee as applicable, of the effective date of such reversal, stay, modification or vacation which shall be governed in all respects by the original provisions of this Final Order, and the DIP Lender and the Adequate Protection Parties shall be entitled to all the rights, remedies, privileges and benefits granted in Bankruptcy Code section 364(e), this Final Order and pursuant to the DIP Documents, with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(e)    Except as expressly provided in this Final Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Obligations and all other rights and remedies of the DIP Lender and the Adequate Protection Parties granted by the provisions of the Interim Order, this Final Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of these Chapter 11 Cases or by any other act or omission, (ii) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code or (iii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to Bankruptcy Code section 1141(d)(4), the Debtors have waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Final Order and the DIP Documents shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code. The DIP Obligations, the DIP Liens, the Superpriority Claims and the

Adequate Protection Obligations and all other rights and remedies of the DIP Lender, or the Adequate Protection Parties granted by the provisions of the Interim Order, this Final Order and the DIP Documents shall continue in full force and effect until the DIP Obligations and the Adequate Protection Obligations are indefeasibly paid in cash in full.

19.    *Limitation on Use of DIP Facility Proceeds and Collateral.*  Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, Cash Collateral, Senior Secured Notes Collateral, DIP Collateral, portion of the proceeds of the DIP Loans or part of the Carve-Out may be used for any of the following (each, a "Lender Claim") without the prior written consent of each affected party:  (a) to object, contest or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under any DIP Document or Prepetition Indenture Document, or the liens or claims granted under the Interim Order, this Final Order, any DIP Document, or any Prepetition Indenture Document; (b) to assert any claim or cause of action against the DIP Lender, the Prepetition Indenture Trustee, or any Prepetition Noteholder or their respective agents, affiliates, representatives, attorneys or advisors; (c) except to contest the occurrence or continuation of an Event of Default as set forth in paragraph 10(c), to prevent, hinder or otherwise delay the DIP Lender's or the Prepetition Indenture Trustee's assertions, enforcement or realization on the Senior Secured Notes Collateral, the Cash Collateral or the DIP Collateral in accordance with the DIP Documents, the Prepetition Indenture Documents, the Interim Order or this Final Order; (d) to assert or prosecute any action for preferences, fraudulent conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses against the Prepetition Indenture Trustee or any Prepetition Noteholder or their respective affiliates, representatives, attorneys or advisors in connection with matters related to the

Prepetition Indenture Documents, the Prepetition Secured Debt, the Prepetition Security Interests, or the Senior Secured Notes Collateral; or (e) to seek to modify any of the rights granted to the DIP Lender or the Adequate Protection Parties hereunder or under the Interim Order, the DIP Documents or the Prepetition Indenture Documents.

20.     *Effect of Stipulations on Third Parties.*

(a)     Each stipulation, admission and agreement contained in paragraph 4 of this Final Order shall be binding upon the Debtors and any successor thereto (including without limitation any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) in all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Lender Claims as of the date of the entry of the Interim Order. Each stipulation and admission contained in paragraph 4 of this Final Order shall also be binding upon all other parties in interest, including without limitation the Committee, under all circumstances and for all purposes, unless and solely to the extent that a party in interest other than the Committee, subject to the limitations contained herein, and subject to obtaining applicable legal standing, timely and properly files an adversary proceeding or contested matter asserting a Lender Claim with respect to any of the stipulations or admissions set forth in this Final Order by no later than the earlier of the date that is seventy-five (75) days from the date of the Interim Order (the "Challenge Period"); provided, however, that the Challenge Period may be extended (a) as has been agreed to, in writing, by the Prepetition Indenture Trustee in its sole discretion or (b) by an order of the Bankruptcy Court, for cause shown, after notice and a hearing and there is a final order in favor of the plaintiff granting such plaintiff relief with respect to a Lender Claim; provided, further, that any purported Lender Claim shall set forth with specificity the basis for such claims and any Lender Claim not so specified prior to the expiration of the Challenge

Period shall be forever deemed waived, released and barred. No Lender Claim may be asserted by the Committee or any of its current or former voting or ex officio members (i) against the Prepetition Indenture Trustee, the Prepetition Noteholders or the DIP Lender or (ii) relating to or arising from the Prepetition Secured Notes Indenture, the Prepetition Indenture Documents, the DIP Facility, the DIP Credit Agreement or any related DIP Documents, or any Collateral securing any Prepetition Secured Debt or DIP Obligations, and only other parties in interest may assert such a Lender Claim if otherwise in accordance with this paragraph 20 of this Final Order. Subject only to the foregoing, as of the Petition Date, the Prepetition Noteholders and Prepetition Indenture Trustee hold allowed secured claims in an amount not less than $194.5 million, not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or other applicable law. For the avoidance of doubt, in the event of the appointment of a chapter 11 trustee or the conversion of the Chapter 11 Cases to cases under chapter 7 prior to the expiration of the Challenge Period, such chapter 11 trustee or chapter 7 trustee, as applicable, shall be entitled to assert a Lender Claim within the time period and subject to the limitations otherwise set forth in this paragraph 20.

(b) The success of any particular Lender Claim shall not alter the binding effect on each party in interest of any stipulation or admission not subject to such Lender Claim. Except to the extent (but only to the extent) a timely and properly filed adversary proceeding or contested matter asserting a Lender Claim is successful, (i) the Prepetition Secured Debt shall constitute allowed claims, not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaims, defenses or "claims" (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or other applicable law, for all purposes in

the Chapter 11 Cases and any subsequent chapter 7 cases, (ii) the Prepetition Security Interests shall be deemed to have been, as of the Petition Date, legal, valid, binding perfected and enforceable liens and security interests not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaims, defenses or "claims" (as such term is defined in the Bankruptcy Code) of any kind, and (iii) the Prepetition Secured Debt and the Prepetition Security Interests shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors).

(c)     Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Lender Claims with respect to the Prepetition Indenture Documents or the Prepetition Secured Debt.

21.     *Final Order Governs.*  In the event of any inconsistency between the provisions of this Final Order and the DIP Documents, the provisions of this Final Order shall govern.

22.     *Binding Effect; Successors and Assigns.*  Subject in all respects to paragraph 20, the DIP Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including without limitation, the DIP Lender, the Adequate Protection Parties, the Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to Bankruptcy Code section 1104, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure

to the benefit of the DIP Lender and the Adequate Protection Parties, provided, however, that except to the extent expressly set forth in the Interim Order or this Final Order, neither the DIP Lender nor the Adequate Protection Parties shall have any obligation to permit the use of Cash Collateral nor to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors. In determining to make any loan (whether under the DIP Credit Agreement, a promissory note or otherwise), to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to the Interim Order, this Final Order or the DIP Documents, the DIP Lender and the Adequate Protection Parties shall not (i) be deemed to be in control of the operations of the Debtors or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates.

23.     *Effectiveness*. This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

Dated: _____ 19 , 2013
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE