**Exhibit A**

**Plan of Reorganization**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CONEXANT SYSTEMS, INC., *et al.*,[1] | ) | Case No. 13-10367 (MFW) |
| | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**SECOND MODIFIED JOINT PLAN OF
REORGANIZATION OF CONEXANT SYSTEMS, INC. AND ITS
DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Paul M. Basta (admitted *pro hac vice*)
Joshua A. Sussberg (admitted *pro hac vice*)
Christopher T. Greco (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:        (302) 426-1189
Facsimile:        (302) 426-9193

- and -

Morton Branzburg (admitted *pro hac vice*)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:        (215) 569-2700
Facsimile:        (215) 568-6603

*Co-Counsel to the Debtors
and Debtors in Possession*
Dated:  April 19, 2013

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Conexant Systems, Inc. (9439); Conexant CF, LLC (6434); Brooktree Broadband Holding, Inc. (5436); Conexant, Inc. (8218); and Conexant Systems Worldwide, Inc. (0601). The Debtors' main corporate address is 4000 MacArthur Blvd., Newport Beach, California 92660.

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND
GOVERNING LAW ................................................................................................................................1

    A.    Defined Terms ................................................................................................................1
    B.    Rules of Interpretation ...................................................................................................9
    C.    Computation of Time ...................................................................................................10
    D.    Governing Law ............................................................................................................10
    E.    Reference to Monetary Figures ...................................................................................10
    F.    Reference to the Debtors or the Reorganized Debtors ................................................10

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIMS AND PRIORITY TAX CLAIMS ...........10

    A.    Administrative Claims .................................................................................................10
    B.    DIP Facility Claims .....................................................................................................12
    C.    Priority Tax Claims .....................................................................................................12
    D.    Statutory Fees ..............................................................................................................12

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .................................12

    A.    Classification of Claims and Interests .........................................................................12
    B.    Summary of Classification ...........................................................................................13
    C.    Treatment of Claims and Interests ..............................................................................13
    D.    Special Provision Governing Claims that are Not Impaired ........................................15
    E.    Acceptance or Rejection of the Plan ............................................................................15
    F.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .................16
    G.    Subordinated Claims ...................................................................................................16

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ................................................................16

    A.    New Notes ...................................................................................................................16
    B.    New Working Capital Facility .....................................................................................16
    C.    Restructuring Transactions ..........................................................................................16
    D.    Sources of Consideration for Plan Distributions .........................................................17
    E.    Corporate Existence .....................................................................................................18
    F.    Vesting of Assets in the Reorganized Debtors ............................................................18
    G.    Cancellation of Existing Securities ..............................................................................18
    H.    Corporate Action .........................................................................................................19
    I.    New Certificates of Incorporation and New By-Laws .................................................19
    J.    Directors and Officers of Holdco and the Reorganized Debtors .................................19
    K.    Effectuating Documents; Further Transactions ...........................................................20
    L.    Management Incentive Program ...................................................................................20
    M.    Emergence Bonus Plan ................................................................................................20
    N.    Payment of Certain Professional Fees .........................................................................20
    O.    Exemption from Certain Taxes and Fees .....................................................................20
    P.    D&O Liability Insurance Policies ................................................................................21
    Q.    Preservation of Causes of Action ................................................................................21

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..........................21

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases .................21
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases ...................21
    C.    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed ...............22
    D.    Insurance Policies ........................................................................................................22
    E.    Modifications, Amendments, Supplements, Restatements or Other Agreements .........22

i

F.     Reservation of Rights ........................................................................................................ 23
G.    Nonoccurrence of Effective Date ...................................................................................... 23
H.    Contracts and Leases Entered Into After the Petition Date .............................................. 23

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ................................................. 23

A.    Timing and Calculation of Amounts to Be Distributed ................................................... 23
B.    Disbursing Agent ............................................................................................................... 23
C.    Rights and Powers of Disbursing Agent ........................................................................... 24
D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ...................... 24
E.    Section 1145 Exemption .................................................................................................... 25
F.     Compliance with Tax Requirements .................................................................................. 25
G.    Allocations ......................................................................................................................... 26
H.    No Postpetition Interest on Claims .................................................................................... 26
I.     Setoffs and Recoupment .................................................................................................... 26
J.     Claims Paid or Payable by Third Parties ........................................................................... 26

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
DISPUTED CLAIMS ................................................................................................................... 27

A.    Allowance of Claims ......................................................................................................... 27
B.    Claims Administration Responsibilities ............................................................................ 27
C.    Estimation of Claims ......................................................................................................... 27
D.    Adjustment to Claims Without Objection ......................................................................... 27
E.    Time to File Objections to Claims ..................................................................................... 27
F.     Disallowance of Claims ..................................................................................................... 27
G.    Amendments to Claims ...................................................................................................... 28
H.    No Distributions Pending Allowance ................................................................................ 28
I.     Distributions After Allowance .......................................................................................... 28

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS ........... 28

A.    Compromise and Settlement of Claims, Interests and Controversies ............................... 28
B.    Discharge of Claims and Termination of Interests ........................................................... 29
C.    Release of Liens ................................................................................................................. 29
D.    Releases by the Debtors ..................................................................................................... 29
E.    Third Party Releases .......................................................................................................... 30
F.     Liabilities to, and Rights of, Governmental Units ............................................................ 30
G.    Exculpation ........................................................................................................................ 31
H.    Injunction ........................................................................................................................... 31
I.     Term of Injunctions or Stays ............................................................................................. 32

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE
PLAN ............................................................................................................................................ 32

A.    Conditions Precedent to Confirmation .............................................................................. 32
B.    Conditions Precedent to the Effective Date ...................................................................... 32
C.    Waiver of Conditions ......................................................................................................... 33
D.    Effect of Failure of Conditions ......................................................................................... 33

ARTICLE X. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ................. 33

A.    Modification and Amendments .......................................................................................... 33
B.    Effect of Confirmation on Modifications .......................................................................... 33
C.    Revocation or Withdrawal of Plan .................................................................................... 33

K&E 24948483

PHIL1 2761469v.1

ARTICLE XI. RETENTION OF JURISDICTION ............................................................................34

ARTICLE XII. MISCELLANEOUS PROVISIONS .........................................................................35
    A.      Immediate Binding Effect ............................................................................35
    B.      Additional Documents ..................................................................................35
    C.      Statutory Committee and Cessation of Fee and Expense Payment ...............36
    D.      Reservation of Rights ..................................................................................36
    E.      Successors and Assigns ................................................................................36
    F.      Notices ........................................................................................................36
            Entire Agreement ........................................................................................37
    H.      Exhibits .......................................................................................................37
    I.      Severability of Plan Provisions ....................................................................37
    J.      Votes Solicited in Good Faith ......................................................................37
    K.      Closing of Chapter 11 Cases ........................................................................37
    L.      Conflicts ......................................................................................................38

K&E 24948483

PHIL1 2761469v.1

**INTRODUCTION**

Conexant Systems, Inc. ("***Conexant***") and its debtor affiliates, as debtors and debtors in possession (each, a "***Debtor***" and, collectively, the "***Debtors***"), propose this joint plan of reorganization (the "***Plan***")[2] for the resolution of the Claims against and Interests in each of the Debtors pursuant to chapter 11 of the Bankruptcy Code.  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates a proposed compromise and settlement between and among the Debtors, the DIP Lender, the Secured Lender, the Equity Sponsors and the Creditors' Committee.  This Plan constitutes a separate chapter 11 plan of reorganization for each Debtor and, unless otherwise explained herein, the classifications and treatment of Claims and Interests apply to each individual Debtor.

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information and projections of future operations, as well as a summary and description of this Plan.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME AND GOVERNING LAW**

A.    *Defined Terms*

As used in this Plan, capitalized terms have the meanings ascribed to them below.

1.    "***Accrued Professional Compensation***" means, at any given time, all accrued, contingent and/or unpaid fees and expenses (including success fees) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under sections 328, 330, 331 or 1103 of the Bankruptcy Code or otherwise rendered allowable before the Effective Date by any retained Professional in the Chapter 11 Cases, or that are awardable and allowable under section 503 of the Bankruptcy Code, that the Bankruptcy Court has not denied by Final Order, (a) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been Filed for any such amount) and (b) after applying any retainer that has been provided to such Professional.  To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

2.    "***Administrative Claim***" means any Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of the Judicial Code; and (c) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code.

3.    "***Administrative Claims Bar Date***" means the date by which all requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, which date shall be 20 days after entry of the Confirmation Order.

4.    "***Administrative Claims Cap***" means $17.5 million, which shall be the maximum amount of Allowed Administrative Claims, excluding Priority Non-Tax Claims, Priority Tax Claims and Fee Claims, incurred but not yet paid as of the Effective Date.

---

[2]    Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to such terms in Article I.A.

1

5.        "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

6.        "*Allowed*" means with respect to any Claim, except as otherwise provided herein:  (a) a Claim that is scheduled by the Debtors as neither disputed, contingent nor unliquidated and for which no contrary proof of claim has been filed; (b) a Claim that is not a Disputed Claim or has been allowed by a Final Order; (c) a Claim that is allowed (i) pursuant to the terms of the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court or (iii) pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; or (d) a Claim as to which a Proof of Claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline.  Except for any Claim that is expressly Allowed herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed and for which no Proof of Claim has been Filed is not considered Allowed and shall be deemed expunged upon entry of the Confirmation Order.

7.        "*Assumed Executory Contract and Unexpired Lease List*" means the list (as may be amended), as determined by the Debtors or the Reorganized Debtors, subject to the Secured Lender's consent, of Executory Contracts and Unexpired Leases (including any amendments or modifications thereto) that will be assumed by the Reorganized Debtors pursuant to the provisions of Article V and which shall be included in the Plan Supplement.

8.        "*Avoidance Actions*" means any and all Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code.

9.        "*Bankruptcy Code*" means chapter 11 of title 11 of the United States Code.

10.        "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of the reference under 28 U.S.C. § 157, the United States District Court for the District of Delaware.

11.        "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

12.        "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

13.        "*Cash*" means the legal tender of the United States of America.

14.        "*Causes of Action*" means any action, claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.   Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

15.        "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court under case number 13-10367 (MFW).

16.        "*Claim*" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor.

K&E 24948483

PHIL1 2761469v.1

17.    "***Claims Bar Date***" means the date or dates to be established by the Bankruptcy Court by which Proofs of Claim must be Filed.

18.    "***Claims Objection Deadline***" means the later of (a) 180 days after the Effective Date or (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to certain Claims.

19.    "***Claims Register***" means the official register of Claims maintained by the Notice, Claims and Balloting Agent.

20.    "***Class***" means a class of Claims or Interests as set forth in Article III pursuant to section 1122(a) of the Bankruptcy Code.

21.    "***Conexant***" means Conexant Systems, Inc., the direct or indirect parent of each of the other Debtors.

22.    "***Conexant OpCo***" means a new corporate subsidiary in which Holdco will hold 100% of the Interests.

23.    "***Confirmation***" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article IX.A having been satisfied or waived pursuant to Article IX.C.

24.    "***Confirmation Date***" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

25.    "***Confirmation Hearing***" means the confirmation hearing held by the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

26.    "***Confirmation Order***" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

27.    "***Consummation***" means the occurrence of the Effective Date.

28.    "***Creditors' Committee***" means the statutory committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases on March 8, 2013, pursuant to section 1102 of the Bankruptcy Code.

29.    "***Cure Claim***" means a Claim based upon a Debtor's default under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor pursuant to section 365 of the Bankruptcy Code.

30.    "***Cure Notice***" means a notice of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include (a) procedures for objecting to proposed assumptions of Executory Contracts and Unexpired Leases, (b) Cure Claims to be paid in connection therewith and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

31.    "***D&O Liability Insurance Policies***" means all insurance policies for directors', managers' and officers' liability maintained by the Debtors as of the Petition Date, including (a) the director and officer liability coverage provided through Arch Insurance Company (Policy No. PCD0043841-01), which provides coverage from April 30, 2012 through April 30, 2013, (b) excess director and officer liability coverage provided through ACE Insurance Company (Policy No. DOX G25588915 001), which provides coverage from April 30, 2012 through April 30, 2013 and (c) any tail coverage (*i.e.*, director and officer insurance coverage that extends beyond the end of the policy period) under a directors' and officers' liability insurance policy for the current and former directors, officers and managers, which policy shall be reasonably acceptable to the Secured Lender.

3

32.    "*Debtor*" means one or more of the Debtors, as debtors and debtors in possession, each in its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

33.    "*Debtors*" means, collectively:    (a) Conexant;  (b) Brooktree Broadband Holding, Inc.; (c) Conexant CF, LLC; (d) Conexant, Inc.; and (e) Conexant Systems Worldwide, Inc.

34.    "*DIP Facility*" means that superpriority secured debtor-in-possession credit facility, comprised of a delayed draw term loan in the amount of $15 million.

35.    "*DIP Facility Claim*" means any Claim derived from, based upon, relating to or arising from the DIP Facility Credit Agreement.

36.    "*DIP Facility Credit Agreement*" means the agreement governing the DIP Facility, dated as of March 1, 2013 among the Debtors and the DIP Lender (as amended, restated, supplemented or otherwise modified from time to time), as well as any other documents entered into in connection therewith.

37.    "*DIP Facility Lender*" means QP SFM Capital Holdings Ltd., in its capacity as lender under the DIP Facility Credit Agreement.

38.    "*DIP Order*" means any interim order (or orders) and the final order of the Bankruptcy Court, each in form and substance acceptable to the DIP Lender, authorizing, *inter alia,* the Debtors to enter into the DIP Facility Credit Agreement and incur postpetition obligations thereunder.

39.    "*Disbursing Agent*" means the Reorganized Debtors or the Entity or Entities selected by the Debtors or Reorganized Debtors and identified in the Plan Supplement, as applicable, to make or facilitate distributions contemplated under the Plan; *provided, however,* that (a) the Secured Notes Trustee shall make any distributions solely on account of the Secured Notes Claim and (b) the Creditors' Committee shall appoint a designee to make any distributions solely on account of the Allowed General Unsecured Claims.

40.    "*Disclosure Statement*" means the *Disclosure Statement for the Second Modified Joint Plan of Reorganization of Conexant Systems, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated April 19, 2013 as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law.

41.    "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is subject to a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order.  A Claim or Administrative Claim that is Disputed as to its amount shall not be Allowed in any amount for purposes of distribution until it is no longer a Disputed Claim.

42.    "*Distribution Date*" means, with respect to a Claim that is Allowed as of the Effective Date, the date that is as soon as practicable after the Effective Date.

43.    "*Distribution Record Date*" means the date that is the Confirmation Date.

44.    "*Effective Date*" means the date selected by the Debtors in consultation with the Secured Lender that is a Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been met or waived pursuant to Article IX.B and Article IX.C and (b) no stay of the Confirmation Order is in effect.

45.    "*Emergence Bonus Plan*" means that certain bonus plan to be implemented pursuant to section 1129(a)(4) of the Bankruptcy Code that will provide for emergence bonuses to certain members of the Debtors' senior management team and employees in an aggregate amount of up to $1.5 million, the recipients and terms of which will be included in the Plan Supplement and shall be otherwise acceptable to the Secured Lender.

4

46.     "*Entity*" means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

47.     "*Equity Sponsors*" means Golden Gate Private Equity, Inc. and August Capital, each as holders of the common shares of Conexant Holdings, Inc.

48.     "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

49.     "*Exculpated Claim*" means any Claim related to any act or omission derived from, based upon, related to or arising from the Chapter 11 Cases, formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement, the Plan (including any term sheets related thereto) or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the filing of the Chapter 11 Cases, the pursuit of Consummation and the administration and implementation of the Plan, including (a) the Restructuring Support Agreement; (b) the issuance of the New Common Stock, (c) the execution, delivery and performance of the New Working Capital Facility, if any, (d) the execution, delivery and performance of the New Notes and (e) the distribution of property or any other consideration under the Plan or any other agreement.

50.     "*Exculpated Party*" means each of:  (a) the Debtors; (b) the Secured Lender; (c) the Secured Notes Trustee; (d) the DIP Facility Lender; (e) the Equity Sponsors; (f) the Creditors' Committee and its members; and (g) with respect to the entities in clauses (a) through (f), such entity's predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants, representatives, management companies, fund advisors and other Professionals.

51.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

52.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

53.     "*Fee Claim*" means a Claim for Accrued Professional Compensation.

54.     "*Fee Claims Escrow Account*" means the account established pursuant to Article II.A.2(b).

55.     "*File*" or "*Filed*" means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

56.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

57.     "*General Unsecured Claim*" means any Unsecured Claim, including the Secured Notes Deficiency Claim and any claim arising from the rejection of a non-residential lease or executory contract, which is not an Intercompany Claim.

58.     "*General Unsecured Claims Recovery Pool*" means $2.9 million in Cash to be paid into a bank account identified by the Disbursing Agent for General Unsecured Claims to be held in trust for the benefit of holders of Allowed General Unsecured Claims and to be distributed in accordance with the provisions of Article III.C.4; *provided, however*, that neither the Debtors nor the Reorganized Debtors shall bear any costs of administering or distributing the General Unsecured Claims Recovery Pool, including, for the avoidance of doubt, the costs of objecting to and/or resolving General Unsecured Claims, and any such costs shall be incurred by the

5

Disbursing Agent for General Unsecured Claims and reimbursed from the General Unsecured Claims Recovery Pool.

59.      "*Governmental Claim*" means any Claim filed by a Governmental Unit, as such term is defined in section 101(27) of the Bankruptcy Code.

60.      "*Governmental Claims Bar Date*" means the date that is 180 days after the Petition Date by which Proofs of Claim must be Filed by Governmental Units.

61.      "*Holdco*" means either (a) Conexant, or any successor thereto, by merger, consolidation or otherwise on or after the Effective Date or (b) any other parent company that is formed on or after the Effective Date that will directly or indirectly hold 100 percent of the Interests in Conexant OpCo pursuant to any actions taken pursuant to Article IV.C hereof.

62.      "*Holdco Board*" means the initial board of directors, board of managers or equivalent governing body of Holdco.

63.      "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

64.      "*Intercompany Claim*" means any Claim held by a Debtor or non-Debtor Affiliate against another Debtor or non-Debtor Affiliate.

65.      "*Intercompany Interest*" means an Interest in a Debtor or non-Debtor Affiliate held by another Debtor or non-Debtor Affiliate.

66.      "*Interests*" means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized or outstanding shares of capital stock of the Debtors together with any warrants, options or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

67.      "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [Docket No. 168].

68.      "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

69.       "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

70.      "*Management Incentive Program*" means that certain post-Effective Date incentive program providing for up to 15% of the fully diluted New Common Stock, or the non-equity equivalent thereof, to be reserved for distribution to officers, directors and employees of the Reorganized Debtors, the terms of which shall be determined by the Holdco Board.

71.      "*New Boards*" mean, collectively, the Holdco Board and the New Subsidiary Boards.

72.      "*New By-Laws*" means the form of the by-laws or limited liability company agreement, as applicable, of each of the Reorganized Debtors, which form shall be included in the Plan Supplement, and shall be acceptable to the Secured Lender.

73.      "*New Certificates of Incorporation*" means the form of the certificates of incorporation or certificates of formation of each of the Reorganized Debtors, which form shall be included in the Plan Supplement, and shall be acceptable to the Secured Lender.

74.      "*New Common Stock*" means the new equity interests of Holdco authorized pursuant to the Plan and to be issued on the Effective Date.

75.      "***New Notes***" means a new unsecured notes in the amount of $76 million to be issued by Holdco on the Effective Date.

76.      "***New Subsidiary Boards***" means the initial board of directors, board of managers or equivalent governing body of each Reorganized Debtor (other than Holdco).

77.      "***New Working Capital Facility***" means a new working capital facility that may be entered into by Holdco to fund working capital expenses and other general corporate purposes on terms and conditions acceptable to the Secured Lender.

78.      "***Notice, Claims and Balloting Agent***" means BMC Group, Inc.

79.      "***Ordinary Course Professional Order***" means the *Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* [Docket No. 170].

80.      "***Other Secured Claim***" means any Secured Claim that is not a DIP Facility Claim or a Secured Notes Claim.

81.      "***Other Secured Claims Cap***" means $1 million, which shall be the maximum amount of Allowed Other Secured Claims incurred but not yet paid as of the Effective Date.

82.      "***Person***" means a person as such term as defined in section 101(41) of the Bankruptcy Code.

83.      "***Petition Date***" means February 28, 2013, the date on which each of the Debtors commenced the Chapter 11 Cases.

84.      "***Plan***" means this *Second Modified Joint Plan of Reorganization of Conexant Systems, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, including the Plan Supplement (as modified, amended or supplemented from time to time), which is incorporated herein by reference.

85.      "***Plan Supplement***" means the compilation of documents and forms of documents, schedules and exhibits to the Plan to be Filed by the Debtors in form and substance acceptable to the Secured Lender no later than ten (10) days before the Voting Deadline on notice to parties in interest including, among others, counterparties to Executory Contracts and Unexpired Leases included on the Assumed Executory Contract and Unexpired Lease List and all holders of Claims in Voting Classes pursuant to Article III.E.1 hereof, and additional documents Filed before the Effective Date as supplements or amendments to the Plan Supplement, including the following:  (a) the New By-Laws; (b) the New Certificates of Incorporation; (c) the Rejected Executory Contract and Unexpired Lease List; (d) the Assumed Executory Contract and Unexpired Lease List; (e) a list of retained Causes of Action, if any; (f) the identification of any Disbursing Agent other than the Reorganized Debtors; (g) the identity of the members of the New Boards; (h) the material terms of the Emergence Bonus Plan; (i) the material terms of the New Notes; (j) the material terms of the New Working Capital Facility and (k) any documentation regarding the establishment of a trust created to hold the General Unsecured Claims Recovery Pool and administer same, if any.  Any reference to the Plan Supplement in this Plan shall include each of the documents identified above as (a) through (k).  The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date with the consent of the Secured Lender.

86.      "***Priority Non-Tax Claims***" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

87.      "***Priority Non-Tax Claims Cap***" means $1 million, which shall be the maximum amount of Allowed Priority Non-Tax Claims incurred but not yet paid as of the Effective Date.

88.      "***Priority Tax Claim***" means any Claim of the kind specified in section 507(a)(8) of the Bankruptcy Code.

K&E 24948483

PHIL1 2761469v.1

89.     "*Professional*" means an Entity:  (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331 and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

90.     "*Proof of Claim*" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

91.     "*Pro Rata*" means the proportion that (a) an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in that Class or (b) Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

92.     "*Reinstated*" means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

93.     "*Rejected Executory Contract and Unexpired Lease List*" means the list (as may be amended), as determined by the Debtors, with the consent of the Secured Lender, or the Reorganized Debtors, of Executory Contracts and Unexpired Leases (including any amendments or modifications thereto) that will be rejected by the Reorganized Debtors pursuant to the provisions of Article V and which shall be included in the Plan Supplement.

94.     "*Rejection Claim*" means a Claim arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

95.     "*Released Party*" means each of:  (a) the Debtors; (b) the Secured Lender; (c) the Secured Notes Trustee; (d) the DIP Facility Lender; (e) the Equity Sponsors; (f) the Creditors' Committee and its members; and (g) with respect to the entities in clauses (a) through (f), such entity's predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants, representatives, management companies, fund advisors and other Professionals.

96.     "*Reorganized Debtors*" means the Debtors, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

97.     "*Restructuring Support Agreement*" means the agreement, effective as of February 26, 2013 among the Debtors, the Secured Lender and the Equity Sponsors, pursuant to which such parties agreed (subject to certain conditions specified therein) to support this Plan.

98.     "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified or supplemented from time to time.

99.     "*Secured*" means when referring to a Claim:  (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed as such pursuant to the Plan.

100.     "*Secured Lender*" means QP SFM Capital Holdings Ltd. as holder under the Secured Notes Indenture.

K&E 24948483

PHIL1 2761469v.1

101.     "*Secured Notes Claim*" means a Secured Claim in the amount of $80 million derived from, based upon, relating to or arising from the Secured Notes Indenture, which, for the avoidance of doubt, shall exclude the Secured Notes Deficiency Claim.

102.     "*Secured Notes Deficiency Claim*" means an Unsecured Claim in the amount of $114,523,300.78 million derived from, based upon, relating to or arising from the Secured Notes Indenture, which, for the avoidance of doubt, shall exclude the Secured Notes Claim, and which upon the Effective Date of the Plan shall be waived by the Secured Lender, who shall receive no distribution from the General Unsecured Claim Recovery Pool pursuant to the Global Settlement.

103.     "*Secured Notes Indenture*" means the Indenture dated as of March 10, 2010, with respect to the 11.25% Senior Secured Notes Due 2015, among Conexant Systems, Inc., as issuer and, Brooktree Broadband Holding, Inc, Conexant, Inc. and Conexant Systems Worldwide, Inc., each as guarantors, the Secured Notes Trustee and the Secured Lender (as amended, restated, supplemented or otherwise modified from time to time).

104.     "*Secured Notes Trustee*" means The Bank of New York Mellon Trust Company, N.A., in its capacity as trustee and collateral trustee under the Secured Notes Indenture.

105.     "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as amended, together with the rules and regulations promulgated thereunder.

106.     "*Securities Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a-78nn, as amended.

107.     "*Security*" means a security as defined in section 2(a)(1) of the Securities Act.

108.     "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

109.     "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

110.     "*Unsecured Claim*" means any Claim that is neither Secured nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court.

111.     "*U.S. Trustee*" means the United States Trustee for the District of Delaware.

112.     "*Voting Deadline*" means 4:00 p.m. (prevailing Eastern Time) on May 23, 2013.

*B.*     *Rules of Interpretation*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule or exhibit, as it may thereafter be amended, modified or supplemented; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the

9

applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; and (13) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order.

C.      *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state or province of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.      *Reference to the Debtors or the Reorganized Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Facility Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *Administrative Claims*

1.      Administrative Claims

Except with respect to Administrative Claims that are Fee Claims and except to the extent that a holder of an Allowed Administrative Claim and the applicable Debtor(s) (with the consent of the Secured Lender) agree to less favorable treatment with respect to such holder, each holder of an Allowed Administrative Claim shall either be paid (a) in full in Cash if such Claims do not exceed the Administrative Claims Cap or (b) a Pro Rata share of $17.5 million if such Claims are Allowed in an amount in excess of the Administrative Claims Cap, to the extent all holders of such Claims consent to such treatment. Such Claims shall be paid on the earlier of (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date and

(b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed; *provided*, *however*, that Allowed Administrative Claims that arise postpetition in the ordinary course of the Debtors' business shall be paid in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions, and subject to the budget set forth in the DIP Facility Credit Agreement.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

For the avoidance of doubt, Cash paid to lease counterparties in connection with the Debtors' resolution of of the *Debtors' Motion for Entry of an Order Authorizing the Rejection of Certain Unexpired Leases, Effective Nunc Pro Tunc to the Petition Date* [Docket No. 18] shall not count against the Administrative Claims Cap.

2.   Professional Compensation

(a)   *Fee Claims*

Professionals asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Interim Compensation Order or any other applicable order of the Bankruptcy Court, an application for final allowance of such Fee Claim no later than 30 days after the Effective Date; *provided*, *however*, that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for services rendered before the Confirmation Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professional Order. Objections to any Fee Claim must be Filed and served on the Reorganized Debtors and the requesting party no later than 60 days after the Effective Date.  To the extent necessary, the Plan and the Confirmation Order shall amend and supersede any previously entered order regarding the payment of Fee Claims.

(b)   *The Fee Claims Escrow Account*

On the Effective Date, the Debtors shall establish and fund the Fee Claims Escrow Account in an amount equal to all Fee Claims outstanding as of the Effective Date (including unbilled estimated amounts).  Amounts held in the Fee Claims Escrow Account shall not constitute property of the Reorganized Debtors.  The Fee Claims Escrow Account may be an interest-bearing account.  In the event there is a remaining balance in the Fee Claims Escrow Account following (a) payment to all holders of Fee Claims under the Plan and (b) the closing of the Chapter 11 Cases, such remaining amount, if any, shall be returned to the Reorganized Debtors.

(c)   *Post-Confirmation Date Fees and Expenses*

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional or other fees and expenses related to implementation and Consummation of the Plan incurred by the Debtors through and including the Effective Date. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or Reorganized Debtors, as applicable, may employ and shall pay any Professional for services rendered or expenses incurred after the Confirmation Date in the ordinary course of business without any further notice to any party or action, order or approval of the Bankruptcy Court.

11

3.      Administrative Claim Bar Date

Except as otherwise provided in this Article II.A, requests for payment of Administrative Claims must be Filed on or before the Administrative Claims Bar Date; *provided that* neither Samsung Electronics nor STATS ChipPAC Ltd. shall be required to file such a request for (a) the value of goods sold or services performed for the Debtors in the ordinary course of business or (b) rebates owing to them in the ordinary course of business.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date.   Objections to such requests, if any, must be Filed and served on the Reorganized Debtors and the requesting party no later than 45 days after the Effective Date.

B.      *DIP Facility Claims*

As of the Effective Date, the DIP Facility Claims shall be Allowed and deemed to be Allowed Claims in the full amount outstanding under the DIP Facility Credit Agreement, including principal, interest, fees and expenses.  On the Effective Date, except to the extent that a holder of an Allowed DIP Facility Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of the Allowed DIP Facility Claim, each holder of such Allowed DIP Facility Claim shall receive its Pro Rata distribution of the New Notes calculated in respect of the aggregate amount of Allowed DIP Facility Claims and the Secured Notes Claim.

C.      *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, on the Distribution Date, at the option of the Debtors (with the consent of the Secured Lender), one of the following treatments: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable nonbankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; (2) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of time not to exceed five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, plus interest at the rate determined under applicable nonbankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; or (3) such other treatment as may be agreed upon by such holder and the Debtors or otherwise determined upon an order of the Bankruptcy Court.

D.      *Statutory Fees*

On the Distribution Date, the Debtors shall pay, in full in Cash, any fees due and owing to the U.S. Trustee and shall provide pre-Confirmation monthly operating reports due at the time of Confirmation.  On and after the Effective Date, Conexant OpCo shall pay the applicable U.S. Trustee fees and shall provide post-Confirmation quarterly reports for each of the Reorganized Debtors until the entry of a final decree in such Debtor's Chapter 11 Case or until such Chapter 11 Case is converted or dismissed.

### ARTICLE III.
### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests.  All Claims and Interests, except for Administrative Claims, DIP Facility Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.   A Claim also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the

12

extent that such Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

B.      *Summary of Classification*

The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor and, unless otherwise explained herein, the classifications set forth in Classes 1 to 7 shall be deemed to apply to each Debtor, as applicable.  Conexant is the only Debtor that possesses a Class 7 with respect to Interests in Conexant.

The following chart summarizes the classification of Claims and Interests pursuant to the Plan:

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Secured Notes Claim | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Unimpaired | Deemed to Accept |
| 6 | Intercompany Interests | Unimpaired | Deemed to Accept |
| 7 | Interests in Conexant | Impaired | Deemed to Reject |

C.      *Treatment of Claims and Interests*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below:

1.      <u>Class 1 - Priority Non-Tax Claims</u>

(a)      *Classification*:  Class 1 consists of Priority Non-Tax Claims.

(b)      *Treatment*:  Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Non-Tax Claim, each holder of such Allowed Priority Non-Tax Claim shall be paid (a) in full in Cash if such Claims do not exceed the Priority Non-Tax Claims Cap or (b) a Pro Rata share of $1 million if such Claims exceed the Priority Non-Tax Claims Cap, to the extent all holders of such Claims consent to such treatment.  Allowed Priority Non-Tax Claim shall be paid on or as reasonably practicable after (i) the Effective Date, (ii) the date on which such Priority Non-Tax Claim against the Debtors becomes an Allowed Priority Non-Tax Claim or (iii) such other date as may be ordered by the Bankruptcy Court.

(c)      *Voting*:  Class 1 is Unimpaired by the Plan, and each holder of a Class 1 Priority Non-Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 1 Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

2.      <u>Class 2 - Other Secured Claims</u>

(a)      *Classification:*  Class 2 consists of Other Secured Claims.

(b)      *Treatment:*  Except to the extent that a holder of an Other Secured Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Other Secured Claim, each holder of such Allowed Other Secured Claim shall receive one of the following treatments, as determined by the applicable Debtor (with the consent of the Secured Lender):  (i) either (a) payment in full

13

in Cash, including the payment of any interest required to be paid under section 506(b) of the Bankruptcy Code, if such Claims do not exceed the Other Secured Claims Cap or (b) a Pro Rata share of $1 million if such Claims exceed the Other Secured Claims Cap, to the extent all holders of such Claims consent to such treatment; (ii) delivery of the collateral securing any such Allowed Other Secured Claim; or (iii) other treatment such that the Allowed Other Secured Claim shall be rendered Unimpaired.

(c)     *Voting:* Class 2 is Unimpaired by the Plan, and each holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.     <u>Class 3 - Secured Notes Claim</u>

(a)     *Classification:* Class 3 consists of the Secured Notes Claim.

(b)     *Allowance:* The Secured Notes Claim shall be Allowed in the total amount of $80,000,000.00.

(c)     *Treatment:* In exchange for full and final satisfaction, settlement, release and discharge of the Secured Notes Claim, the holder of such Allowed Secured Notes Claim shall receive (i) its Pro Rata distribution of the New Notes, calculated in respect of the aggregate amount of all Allowed DIP Facility Claims and the Secured Notes Claim and (ii) 100% of the New Common Stock. For the avoidance of doubt, the Secured Notes Claim shall not include the Secured Notes Deficiency Claim, which claim shall be treated as a General Unsecured Claim.

(d)     *Voting*: Class 3 is Impaired by the Plan. Therefore, the holder of the Class 3 Secured Notes Claim is entitled to vote to accept or reject the Plan.

4.     <u>Class 4 - General Unsecured Claims</u>

(a)     *Classification:* Class 4 consists of General Unsecured Claims.

(b)     *Treatment:* Except to the extent that a holder of an Allowed General Unsecured Claim, including for the avoidance of doubt the Secured Notes Deficiency Claim, agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed General Unsecured Claim, each holder of such Allowed General Unsecured Claim shall receive a Pro Rata distribution of the General Unsecured Claims Recovery Pool; *provided, however,* that upon the Effective Date of the Plan, the Secured Lender will be deemed to waive the Secured Notes Deficiency Claim and its rights to participate in and/or receive any distribution from the General Unsecured Claims Recovery Pool.

(c)     *Voting:* Class 4 is Impaired by the Plan. Therefore, holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

5.     <u>Class 5 - Intercompany Claims</u>

(a)     *Classification:* Class 5 consists of Intercompany Claims.

(b)     *Treatment:* To preserve the Debtors' corporate structure, on the Effective Date, or as soon thereafter as is practicable, Intercompany Claims will be paid, adjusted, reinstated in full or in part, or cancelled or discharged in full or in part, in each case, to the extent determined by the Reorganized Debtors with the consent of the Secured Lender. No

14

distribution shall be made on account of Intercompany Claims; *provided, however*, that the Debtors, with the consent of the Secured Lender, and the Reorganized Debtors will be entitled to transfer funds between and among themselves and their non-Debtor Affiliates as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.  Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices.

(c)     *Voting:*  Class 5 is Unimpaired by the Plan, and each holder of a Class 5 Intercompany Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 5 Intercompany Claims are not entitled to vote to accept or reject the Plan.

6.     Class 6 - Intercompany Interests

(a)     *Classification:*  Class 6 consists of Intercompany Interests.

(b)     *Treatment*:  To preserve the Debtors' corporate structure, on the Effective Date, or as soon thereafter as is practicable, Intercompany Interests will be adjusted or reinstated in full or in part, or cancelled or discharged in full or in part, in each case, to the extent determined by the Reorganized Debtors with the consent of the Secured Lender.

(c)     *Voting*:  Class 6 is Unimpaired by the Plan, and each holder of a Class 6 Intercompany Interests is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 6 Intercompany Interests are not entitled to vote to accept or reject the Plan.

7.     Class 7 - Interests in Conexant

(a)     *Classification:*  Class 7 consists of Interests in Conexant.

(b)     *Treatment:*  Holders of Interests in Conexant shall not receive any distribution on account of such Interests.  On the Effective Date, Interests in Conexant shall be cancelled and discharged.

(c)     *Voting:*  Class 7 is Impaired and each holder of Class 7 Interests in Conexant is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Class 7 Interests in Conexant are not entitled to vote to accept or reject the Plan.

D.     *Special Provision Governing Claims that are Not Impaired*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Claims that are not Impaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are not Impaired.

E.     *Acceptance or Rejection of the Plan*

1.     Voting Classes

Classes 3 and 4 are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

K&E 24948483

PHIL1 2761469v.1

2.       Presumed Acceptance of the Plan

Classes 1 and 2 are Unimpaired under the Plan, and the holders in such Classes are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.  Additionally, holders in Class 5 and Class 6 are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code because all holders in Class 5 and Class 6 for each of the Debtors are proponents of the Plan.

3.       Presumed Rejection of Plan

Class 7 is Impaired and shall receive no distribution under the Plan.  The holders in Class 7 are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

F.     *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The Debtors shall seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

G.     *Subordinated Claims*

Except as expressly provided herein, the allowance, classification and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal or equitable subordination relating thereto.

**ARTICLE IV.
MEANS FOR IMPLEMENTATION OF THE PLAN**

A.     *New Notes*

The New Notes shall (a) be issued by Holdco in the principal amount of $76 million, (b) have an interest rate of 11.25% per annum to be paid semi-annually on a cash or pay in kind basis at Holdco's election, (c) have a maturity date of 11 years from the Effective Date and (d) otherwise be subject to the terms and conditions set forth in the New Notes.

B.     *New Working Capital Facility*

The Reorganized Debtors may enter into the New Working Capital Facility to fund working capital expenses and other general corporate purposes on terms and conditions acceptable to the Secured Lender, the material terms of which will be set forth in the Plan Supplement, as applicable.

C.     *Restructuring Transactions*

On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including:  (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation,

16

conversion or dissolution pursuant to applicable state law; (4) the creation of a new holding company consistent with the terms of the Plan; and (5) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

Without limiting the foregoing, on the Effective Date and at the election of the Secured Lender, Holdco shall organize Conexant OpCo and contribute to such subsidiary all of its operating assets used to conduct its active businesses, subject to such subsidiary contemporaneously assuming Holdco's liabilities (to the extent not discharged pursuant to the Plan). Notwithstanding anything to the contrary herein, on the Effective Date, (1) all liabilities of Holdco that are not discharged pursuant to the Plan (other than liabilities under the New Notes) shall be transferred to Conexant OpCo, (2) Holdco shall have no liabilities other than its obligations under the New Notes and (3) there shall be no claims assertable against Holdco other than on account of the New Notes. Holdco shall otherwise retain the stock of its subsidiaries and any other assets necessary or desirable for it to function as a holding company of the Debtors and the Reorganized Debtors (other than Holdco) and its non-Debtor subsidiaries going forward, and shall take such further actions necessary or requested by the Secured Lender to implement any of the foregoing prior to or as of the Effective Date.

D.      *Sources of Consideration for Plan Distributions*

The Reorganized Debtors shall make distributions under the Plan as follows:

1.      Issuance and Distribution of New Common Stock

The issuance of the New Common Stock by Holdco, including the reservation of up to 15% of the fully diluted number of shares of New Common Stock in connection with the Management Incentive Program, if applicable, is authorized without the need for any further corporate action and without any further action by the holders of Claims or Interests.

On the Effective Date, an initial number of shares of New Common Stock representing 100% of the New Common Stock shall be distributed to the holder of the Class 3 Secured Notes Claim.

All of the shares of New Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid and non-assessable. Each distribution and issuance of the New Common Stock under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

2.      Issuance of the New Notes

On the Effective Date Holdco will issue the New Notes. Confirmation shall be deemed approval of the New Notes (including transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by Holdco in connection therewith) and Holdco is authorized to execute and deliver those documents necessary or appropriate to issuing the New Notes without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, rule, vote, consent, authorization or approval of any Person, subject to such modifications as the Reorganized Debtors may deem to be reasonably necessary to consummate issuance of the New Notes.

On the Effective Date, the New Notes shall be distributed Pro Rata to holders of DIP Facility Claims and the holder of the Class 3 Secured Notes Claim in proportion to the aggregate amount of all Allowed DIP Facility Claims and the Secured Notes Claim.

3.      Issuance of the General Unsecured Claims Recovery Pool

On the Effective Date the Reorganized Debtors will distribute $2.9 million in Cash into the General Unsecured Claims Recovery Pool to be held in trust for the benefit of holders of Allowed General Unsecured Claims. Neither the Debtors nor the Reorganized Debtors shall bear any costs of administering or distributing the

17

General Unsecured Claims Recovery Pool, including, for the avoidance of doubt, the costs of objecting to and/or resolving General Unsecured Claims, and any such costs shall be incurred by the Disbursing Agent for General Unsecured Claims and reimbursed from the General Unsecured Claims Recovery Pool.

    4.    <u>Cash on Hand and the New Working Capital Facility</u>

On the Effective Date, available cash-on-hand of the Reorganized Debtors (including proceeds of the converted DIP Facility) and proceeds from the New Working Capital Facility, if any, will be used to fund any outstanding payments, obligations or expenses required to consummate the Plan.

E.    *Corporate Existence*

Upon the Effective Date, Holdco will issue 100 percent of the New Common Stock and issue 100 percent of the New Notes. Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Debtor shall continue to exist as a separate corporation, limited liability company, partnership or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other analogous formation or governing documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation or governing documents) are amended by the Plan or otherwise, with the consent of the Secured Lender. To the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial or federal law).

F.    *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan (including with respect to the transfer of assets and liabilities from Holdco to Conexant OpCo as set forth in Article IV.C above) or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances, except for Liens securing the New Working Capital Facility, if any; *provided, however,* that on the Effective Date, the assets and liabilities of Holdco that are not discharged pursuant to the Plan (other than its obligations under the New Notes) shall be transferred to Conexant OpCo as set forth in Article IV.C above. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims, Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

G.    *Cancellation of Existing Securities*

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, on the Effective Date: (1) the obligations of the Debtors under the DIP Facility Credit Agreement, the Secured Notes Indenture and any other certificate, share, note, bond, indenture, purchase right, option, warrant or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors and their non-Debtor Affiliates, and the Reorganized Debtors and their non-Debtor Affiliates shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; *provided, however,* notwithstanding Confirmation or the occurrence of the

Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim shall continue in effect for purposes of enabling holders of Allowed Claims to receive distributions under the Plan as provided herein; *provided*, *further*, *however*, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order or the Plan or result in any expense or liability to the Reorganized Debtors, except to the extent set forth in or provided for under this Plan.  Notwithstanding the foregoing and anything else contained in the Plan, the Secured Notes Indenture shall continue in effect to the extent necessary to: (i) allow distributions to be made under the Plan pursuant to the Secured Notes Indenture and to allow the Secured Notes Trustee to perform such other necessary functions with respect thereto and to have the benefit of all the protections and other provisions of the Secured Notes Indenture in doing so; (ii) permit the Secured Notes Trustee to assert, maintain and enforce its charging lien; (iii) permit the Secured Notes Trustee to assert, maintain and enforce any rights to indemnification, contribution or other Claims it may have under the Secured Notes Indenture; (iv) permit the Secured Notes Trustee to exercise its rights and obligations relating to the interests of the Secured Lender or other applicable noteholders or lenders and its relationship with such noteholders or lenders; and (v) allow the Secured Notes Trustee to appear and be heard in these Chapter 11 Cases.

H.      *Corporate Action*

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including:  (1) distribution of the New Common Stock; (2) selection and appointment of the directors and officers for the Reorganized Debtors and Holdco; (3) implementation of the restructuring transactions contemplated by this Plan, as applicable; (4) reservation of up to 15% of the fully diluted New Common Stock or the non-equity equivalent thereof pursuant to the Management Incentive Program; (5) issuance of the New Notes; (6) entry into the New Working Capital Facility, if any; (7) implementation of the Emergence Bonus Plan; and (8) all other actions contemplated by the Plan (whether to occur before, on or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors or officers of the Debtors or the Reorganized Debtors.  On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors shall be authorized and (as applicable) directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including any and all other agreements, documents, securities and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article IV shall be effective notwithstanding any requirements under non-bankruptcy law.

I.      *New Certificates of Incorporation and New By-Laws*

On or immediately before the Effective Date, Holdco and the Reorganized Debtors will file their respective New Certificates of Incorporation, which shall be in form and substance acceptable to the Secured Lender, with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces or countries of incorporation in accordance with the corporate laws of the respective states, provinces or countries of incorporation. Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Certificates of Incorporation will prohibit the issuance of non-voting equity securities.  On or after the Effective Date, the Reorganized Debtors may amend and restate their respective New Certificates of Incorporation and New By-Laws and other constituent documents as permitted by the laws of their respective states, provinces or countries of incorporation and their respective New Certificates of Incorporation and New By-Laws.

J.      *Directors and Officers of Holdco and the Reorganized Debtors*

As of the Effective Date, the term of the current members of the Debtors' boards of directors of shall expire, and the initial boards of directors, including the Holdco Board and the New Subsidiary Boards, as well as the officers of Holdco and each of the Reorganized Debtors shall be appointed in accordance with the New Certificates of Incorporation and New By-Laws of Holdco and each Reorganized Debtor.

K&E 24948483

PHIL1 2761469v.1

The directors of the Holdco Board and the New Subsidiary Boards shall be selected by the Secured Lender. The New Subsidiary Boards shall include the Chief Executive Officer as a director.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in the Plan Supplement the identity and affiliations of any Person proposed to serve on the initial Holdco Board and the New Subsidiary Boards, as well as those Persons that serve as an officer of any of the Reorganized Debtors.  To the extent any such director or officer is an "insider" under the Bankruptcy Code, the nature of any compensation to be paid to such director or officer will also be disclosed.  Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Certificates of Incorporation, New By-Laws and other constituent documents of the Reorganized Debtors.

K.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, Holdco and the Reorganized Debtors, and the officers and members of the New Boards thereof, are authorized to and may issue, execute, deliver, file or record such contracts, Securities, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan, including the New Common Stock, the New Notes and the New Working Capital Facility, if any, in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization or consents except those expressly required pursuant to the Plan.

L.      *Management Incentive Program*

The Reorganized Debtors will implement a Management Incentive Program, which shall reserve up to 15% of the fully diluted New Common Stock, or the non-equity equivalent thereof, to be reserved for distribution to officers, directors and employees of the Reorganized Debtors, on terms to be determined by the Holdco Board.

M.      *Emergence Bonus Plan*

On the Effective Date, pursuant to section 1129(a)(4) of the Bankruptcy Code, the Debtors will pay emergence bonuses to certain members of the senior management team and employees in an aggregate amount of up to $1.5 million, the recipients and terms of which will be included in the Plan Supplement and shall be acceptable to the Secured Lender.

N.      *Payment of Certain Professional Fees*

On the Effective Date, the Debtors shall pay all reasonable and documented fees and expenses of (a) Akin Gump Strauss Hauer & Feld LLP, counsel to the Secured Lender (b) local co-counsel to the Secured Lender, (c) The Blackstone Group, financial advisor to the Secured Lender, (d) the Secured Notes Trustee and (e) counsel to the Secured Notes Trustee.

O.      *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any restructuring transaction authorized by the Plan; or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any Restructuring Transaction occurring under the Plan.

K&E 24948483

PHIL1 2761469v.1

P.      *D&O Liability Insurance Policies*

Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors shall assume (and assign to the Reorganized Debtors if necessary to continue the D&O Liability Insurance Policies in full force) all of the D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' assumption of the D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed.

Before the Petition Date, the Debtors obtained reasonably sufficient tail coverage (*i.e.*, D&O insurance coverage that extends beyond the end of the policy period) under a directors and officers' liability insurance policy for the current and former directors, officers and managers.  After the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce the coverage under such tail coverage liability insurance in effect and all members, managers, directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date of the Plan or consummation of a sale pursuant to section 363 of the Bankruptcy Code shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date of the Plan.

Q.      *Preservation of Causes of Action*

Unless any Causes of Action against an Entity are expressly retained in the list of retained Causes of Action included in the Plan Supplement, all Causes of Action shall be waived, relinquished, exculpated, released, compromised or settled in accordance with Article VIII hereof, including, for the avoidance of doubt, all Avoidance Actions.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the Debtors; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to assume Filed on or before the Effective Date; or (4) is identified as an Executory Contract or Unexpired Lease on the Assumed Executory Contracts and Unexpired Lease List.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, the Assumed Executory Contract and Unexpired Leases List or Rejected Executory Contract and Unexpired Leases List, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court within 30 days after the date of entry of an order of the

K&E 24948483

PHIL1 2761469v.1

Bankruptcy Court (including the Confirmation Order) approving such rejection.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order or approval of the Bankruptcy Court.  Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan, as applicable.

**Rejection Claims for which a Proof of Claim is not timely Filed will be forever barred from assertion against the Debtors or the Reorganized Debtors, their Estates and their property unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  Such Rejection Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Article VIII hereof.**

C.      *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed*

Any monetary defaults under each Executory Contract and Unexpired Lease as reflected on the Assumed Executory Contracts and Unexpired Lease List shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.  At least 7 days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed, Cure Notices of proposed assumption and proposed amounts of Cure Claims to the applicable third parties.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served and actually received by the Debtors before the Effective Date.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount; *provided, however*, the Debtors, with the consent of the Secured Lender, shall have the right to alter, amend, modify or supplement the Assumed Executory Contracts and Unexpired Lease List or Rejected Executory Contracts and Unexpired Lease List, as applicable, as identified in the Plan Supplement, through and including the Effective Date.  To the extent that the Debtors, with the consent of the Secured Lender, alter, amend, modify or supplement the lists of Executory Contracts and Unexpired Lease included in the Plan Supplement, the Debtors will provide notice to each counterparty to an affected Executory Contract or Unexpired Lease within five days of such decision.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date of the Debtors or Reorganized Debtors assume such Executory Contract or Unexpired Lease.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court.

D.      *Insurance Policies*

All of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents and instruments related thereto.

E.      *Modifications, Amendments, Supplements, Restatements or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect

such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority or amount of any Claims that may arise in connection therewith.

F.     *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed or Rejected Executory Contract and Unexpired Lease List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, with the consent of the Secured Lender, or Reorganized Debtors, as applicable, shall have 28 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

G.     *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

H.     *Contracts and Leases Entered Into After the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.     *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in each applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan.  Except as otherwise provided in the Plan, holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.  The Debtors shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Voting Deadline.

B.     *Disbursing Agent*

All distributions under the Plan shall be made by the Disbursing Agent on the Effective Date or as soon as reasonably practicable thereafter.  To the extent the Disbursing Agent is one or more of the Reorganized Debtors, or

a trust established to hold and administer the General Unsecured Claim Recovery Pool on behalf of holders of Allowed General Unsecured Claims, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

C.     *Rights and Powers of Disbursing Agent*

     1.     Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

     2.     Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors; *provided, however*, that neither the Debtors nor the Reorganized Debtors shall bear any costs of administering or distributing the General Unsecured Claims Recovery Pool, including, for the avoidance of doubt, the costs of objecting to and/or resolving General Unsecured Claims, and any such costs shall be incurred by the Disbursing Agent for General Unsecured Claims and reimbursed from the General Unsecured Claims Recovery Pool.

D.     *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

     1.     Delivery of Distributions

         (a)     Delivery of Distributions to Secured Notes Trustee

Except as otherwise provided in the Plan, all distributions to the holder of Secured Notes Claim shall be governed by the Secured Notes Indenture and shall be deemed completed when made to the Secured Notes Trustee, who shall be deemed to be the holder of the Secured Notes Claim for purposes of distributions to be made hereunder.  The Secured Notes Trustee shall hold or direct such distributions for the benefit of the holder of the Allowed Secured Notes Claim.  As soon as practicable in accordance with the requirements set forth in this Article VI, the Secured Notes Trustee shall arrange to deliver such distributions to or on behalf of such holder of the Allowed Secured Notes Claim.

         (b)     Delivery of Distributions to DIP Facility Lender

Except as otherwise provided in the Plan, all distributions to the holder of the DIP Facility Claims shall be governed by the DIP Facility Credit Agreement and shall be deemed completed when made to the DIP Facility Lender.

         (c)     Delivery of Distributions to Disbursing Agent for General Unsecured Claims

Except as otherwise provided in the Plan, all distributions to holders of Allowed General Unsecured Claims shall be deemed completed when made to the Disbursing Agent for General Unsecured Claims, who shall be deemed to be the holder of all General Unsecured Claims for purposes of distributions to be made hereunder.  The Disbursing Agent for General Unsecured Claims shall have the authority to administer the General Unsecured Claims Recovery Pool with respect to General Unsecured Claims, including objecting to and/or resolving General Unsecured Claims. As of the Effective Date of the Plan, the Secured Lender shall be deemed to waive the Secured Notes Deficiency Claim and its right to participate in the General Unsecured Claims Pool.

(d)    Delivery of Distributions in General

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be made to holders of record as of the Distribution Record Date by the Reorganized Debtors or the Disbursing Agent, as appropriate: (1) to the signatory set forth on any of the Proofs of Claim Filed by such holder or other representative identified therein (or at the last known addresses of such holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address); (2) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors or the applicable Disbursing Agent, as appropriate, after the date of any related Proof of Claim; (3) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Reorganized Debtors or the applicable Disbursing Agent, as appropriate, has not received a written notice of a change of address; or (4) on any counsel that has appeared in the Chapter 11 Cases on the holder's behalf.  Subject to this Article VI, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment or like legal process, so that each holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtors, the Reorganized Debtors and the Disbursing Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

2.    Minimum Distributions

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of Cash less than $50 in value, and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII and its holder is forever barred pursuant to Article VIII from asserting that Claims against the Reorganized Debtors or their property.

3.    Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided, however,* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any holder to such property or Interest in property shall be discharged and forever barred.

E.    Section 1145 Exemption

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance and distribution of the New Notes and the New Common Stock as contemplated by Article IV.D of the Plan shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution or sale of Securities.  In addition, under section 1145 of the Bankruptcy Code, such New Notes and New Common Stock will be freely transferable in the U.S. by the recipients thereof, subject to  the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments and subject to any restrictions in Holdco's New Certificate of Incorporation.

F.    Compliance with Tax Requirements

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding

25

taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.

G.     Allocations

        Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

H.     No Postpetition Interest on Claims

        Unless otherwise specifically provided for in the DIP Order, the Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

I.     Setoffs and Recoupment

        The Debtors may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claim it may have against the holder of such Claim.

J.     Claims Paid or Payable by Third Parties

        1.     Claims Paid by Third Parties

        The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

        2.     Claims Payable by Third Parties

        No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

        3.     Applicability of Insurance Policies

        Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers

26

under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED AND DISPUTED CLAIMS

A.     *Allowance of Claims*

After the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately before the Effective Date.

B.     *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors or any party administering the Claims shall have the sole authority:  (1) to File, withdraw or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court, *provided, however,* that any party administering the Claims must consult with the Debtors or Reorganized Debtors, as applicable, before settling, compromising or filing an objection to any Claim held by the Reorganized Debtors' current vendors or suppliers.

C.     *Estimation of Claims*

Before or after the Effective Date, the Debtors, Reorganized Debtors or any party administering the Claims, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.     *Adjustment to Claims Without Objection*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Reorganized Debtors or any party administering the Claims without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

E.     *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Deadline.

F.     *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549

K&E 24948483

PHIL1 2761469v.1

or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtors.  All Claims Filed on account of an employee benefit shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent the Reorganized Debtors elect to honor such employee benefit (or assume the agreement(s) providing such employee benefit are assumed under the Plan), without any further notice to or action, order or approval of the Bankruptcy Court.

**EXCEPT AS PROVIDED HEREIN OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS ON OR BEFORE THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

G.     *Amendments to Claims*

On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors.  Absent such authorization, any new or amended Claim Filed shall be deemed disallowed in full and expunged without any further action.

H.     *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed as set forth in Article VII.B, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

I.     *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required under applicable bankruptcy law.

**ARTICLE VIII.**
**SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS**

A.     *Compromise and Settlement of Claims, Interests and Controversies*

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, including the global settlement with the Creditors' Committee, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and holders, and is fair, equitable and reasonable.  In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other Entities.  Notwithstanding the foregoing and anything else contained in the Plan (including the release,

28

injunction and stay provisions contained in this Article VIII), nothing herein shall be construed to waive, release, impact or otherwise impair the Secured Notes Trustee's rights under the Secured Notes Indenture to: (i) effectuate and enable distributions under the Plan pursuant to the Secured Notes Indenture and have the benefit of all the protections and other provisions of the Secured Notes Indenture in doing so; (ii) assert, maintain and enforce its charging lien; (iii) assert, maintain and enforce any rights to indemnification, contribution or other Claims it may have under the Secured Notes Indenture; and (iv) exercise its rights and obligations relating to the interests of the Secured Lender or other applicable noteholders or lenders and its relationship with such noteholders or lenders.

B.      *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument or other agreement or document created pursuant to the Plan, the distributions, rights and treatment that are provided in the Plan shall be in complete satisfaction, discharge and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt, right or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan. Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

C.      *Release of Liens*

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

D.      *Releases by the Debtors*

ON THE EFFECTIVE DATE OF THE PLAN AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, THE RELEASED PARTIES WILL BE EXPRESSLY, UNCONDITIONALLY, GENERALLY AND INDIVIDUALLY AND COLLECTIVELY RELEASED, ACQUITTED AND DISCHARGED BY THE DEBTORS AND THEIR ESTATES FROM ANY AND ALL ACTIONS, CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, BY STATUTE OR OTHERWISE, THAT THE DEBTORS, THE REORGANIZED DEBTORS, THE DEBTORS' ESTATES OR THEIR AFFILIATES (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER ENTITY, EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' RESTRUCTURING, THE CHAPTER 11 CASES,

29

THE PURCHASE, SALE OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR  CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE RESTRUCTURING, THE NEGOTIATION, FORMULATION OR PREPARATION OF THE PLAN, THE PLAN SUPPLEMENT, ANY DISCLOSURE STATEMENT OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE RELATING TO THE DEBTORS TAKING PLACE ON OR BEFORE THE CONFIRMATION DATE OF THE PLAN, EXCEPT FOR ANY CLAIMS AND CAUSES OF ACTION FOR ACTUAL FRAUD.

E.       *Third Party Releases*

ON THE EFFECTIVE DATE OF THE PLAN AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, EACH HOLDER OF A CLAIM OR AN INTEREST IN THE DEBTORS THAT DOES NOT OPT OUT OF THE RELEASES CONTAINED IN THIS PARAGRAPH SHALL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY AND INDIVIDUALLY AND  COLLECTIVELY, RELEASED, ACQUITTED AND DISCHARGED THE DEBTORS (INCLUDING THE DEBTORS' PREDECESSORS, SUCCESSORS AND ASSIGNS, SUBSIDIARIES, AFFILIATES, MANAGED ACCOUNTS OR FUNDS, CURRENT AND FORMER OFFICERS, DIRECTORS, PRINCIPALS, SHAREHOLDERS, MEMBERS, PARTNERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS AND OTHER PROFESSIONALS) AND THE RELEASED PARTIES FROM ANY AND ALL ACTIONS, CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, THAT SUCH HOLDER (WHETHER INDIVIDUALLY OR COLLECTIVELY) EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' RESTRUCTURING, THE CHAPTER 11 CASES, THE PURCHASE, SALE OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE RESTRUCTURING, INCLUDING THE NEGOTIATION, FORMULATION OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE RELATING TO THE DEBTORS TAKING PLACE ON OR BEFORE THE CONFIRMATION DATE OF THE PLAN, EXCEPT FOR ANY CLAIMS AND CAUSES OF ACTION FOR ACTUAL FRAUD.

F.       *Liabilities to, and Rights of, Governmental Units*

Nothing in the Plan or Confirmation Order shall discharge, release, or preclude:  (1) any liability to a Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising on or after the Confirmation Date; (3) any liability to a Governmental Unit on the part of any Person or Entity other than the Debtors or Reorganized Debtors; (4) any valid right of setoff or recoupment by a Governmental Unit; or (5) any criminal liability.  Nothing in the Plan or Confirmation Order shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence.  The discharge and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, after the Confirmation Date, pursuing any police or regulatory action.

K&E 24948483

PHIL1 2761469v.1

G.      *Exculpation*

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR PLAN SUPPLEMENT, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM ANY EXCULPATED CLAIM, OBLIGATION, CAUSE OF ACTION OR LIABILITY FOR ANY EXCULPATED CLAIM, EXCEPT FOR GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.    THE DEBTORS AND THE REORGANIZED DEBTORS (AND EACH OF THEIR RESPECTIVE AFFILIATES, AGENTS, DIRECTORS, OFFICERS, EMPLOYEES, ADVISORS AND ATTORNEYS) HAVE PARTICIPATED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF THE SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.

H.      *Injunction*

FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN ARTICLE VIII HEREOF, THE DEBTORS AND HOLDERS OF CLAIMS OR INTERESTS SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE VIII HEREOF.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO ARTICLE VIII.D OR ARTICLE VIII.E DISCHARGED PURSUANT TO ARTICLE VIII.B, OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE VIII.G ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.

THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, PROPERTY OR ESTATES.    ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED.

K&E 24948483

PHIL1 2761469v.1

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED, AND THE DEBTORS' LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

EXCEPT AS EXPRESSLY SET FORTH HEREIN OR IN THE CONFIRMATION ORDER, ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THE DEBTORS' ESTATES, THE REORGANIZED DEBTORS, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

I.        *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### ARTICLE IX.
### CONDITIONS PRECEDENT TO CONFIRMATION
### AND CONSUMMATION OF THE PLAN

A.        *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation that all provisions, terms and conditions hereof are approved in the Confirmation Order.

B.        *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

1.        The Confirmation Order (a) shall have been duly entered and be a Final Order and (b) shall include a finding by the Bankruptcy Court that the New Notes and the New Common Stock to be issued on the Effective Date will be authorized and exempt from registration under applicable securities law pursuant to section 1145 of the Bankruptcy Code and (c) shall be in form and substance otherwise acceptable to the Secured Lender.

2.        Any amendments, modifications or supplements to the Plan (including the Plan Supplement), if any, shall be acceptable to the Secured Lender.

3.        All actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

4.        The amount of (a) Allowed Administrative Claims, excluding Fee Claims, shall not exceed and aggregate of $17.5 million, (b) Allowed Non-Tax Priority Claims shall not exceed an aggregate of $1 million, and (c) Allowed Other Secured Claims shall not exceed an aggregate of $1 million, unless otherwise agreed to by the Secured Lender.

5.        The Debtors shall issue the New Notes and any conditions precedent to funding under the New Notes shall have been satisfied or waived.

32

6.      The Debtors shall enter into the New Working Capital Facility, if applicable, and the conditions precedent to funding under the New Working Capital Facility shall have been satisfied or waived.

C.      *Waiver of Conditions*

The conditions to Confirmation and to Consummation set forth in Article IX may be waived by the Debtors, with the consent of the Secured Lender, without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

D.      *Effect of Failure of Conditions*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by the Debtors, any holders or any other Entity; (2) prejudice in any manner the rights of the Debtors, any holders or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any holders or any other Entity in any respect.

## ARTICLE X.
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Except as otherwise specifically provided in the Plan, and subject to the consent of the Secured Lender, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), and subject to the consent of the Secured Lender, each of the Debtors expressly reserves its respective rights to revoke or withdraw, to alter, amend or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor, any holder or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor, any holder or any other Entity.

K&E 24948483

PHIL1 2761469v.1

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.        allow, disallow, determine, liquidate, classify, estimate or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests;

2.        decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals (including Fee Claims) authorized pursuant to the Bankruptcy Code or the Plan;

3.        resolve any matters related to:  (a) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired or terminated;

4.        ensure that distributions to holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.        adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.        adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.        enter and implement such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Plan Supplement or the Disclosure Statement;

8.        enter and enforce any order for the sale of property pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code;

9.        resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.        issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.        resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions and other provisions contained in Article VIII, and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

12.        resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim for amounts not timely repaid pursuant to Article VI.J.1;

34

13.  enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

14.  determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement or the Confirmation Order;

15.  enter an order or Final Decree concluding or closing any of the Chapter 11 Cases;

16.  adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.  consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.  determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.  hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

20.  hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

21.  hear and determine all disputes involving the existence, nature, scope or enforcement of any exculpations, discharges, injunctions and releases granted in connection with and under the Plan, including under Article VIII;

22.  enforce all orders previously entered by the Bankruptcy Court; and

23.  hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.  *Immediate Binding Effect*

Subject to Article IX.B and notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors and any and all holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.  *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, which agreements and other documents shall be in form and substance acceptable to the Secured Lender. The Debtors or Reorganized Debtors, as applicable, and all holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

K&E 24948483

PHIL1 2761469v.1

C.     *Statutory Committee and Cessation of Fee and Expense Payment*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, including the Creditors' Committee, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.  The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by any statutory committees after the Effective Date.

D.     *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders before the Effective Date.

E.     *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries or guardian, if any, of each Entity.

F.     *Notices*

To be effective, all notices, requests and demands to or upon the Debtors or the Secured Lender shall be in writing (including by facsimile transmission).  Unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed to the following:

> **If to the Debtors**:
> Kirkland & Ellis LLP
> 601 Lexington Avenue
> New York, New York 10022
> Attention:  Joshua A. Sussberg, Esq.
> Facsimile: (212) 446-6460
> E-mail address:  joshua.sussberg@kirkland.com
>
> - and -
>
> Klehr Harrison Harvey Branzburg LLP
> 919 Market Street, Suite 1000
> Wilmington, Delaware 19801-3062
> Attention: Domenic E. Pacitti, Esq.
> Facsimile:  (302) 426-9193
> E-mail Address:  dpacitti@klehr.com
>
> **If to the Secured Lender**:
> Akin Gump Strauss Hauer & Feld LLP
> One Bryant Park
> Bank of America Tower
> New York, New York 10036
> Facsimile:  (212) 872-1002
> Attention:  Michael S. Stamer, Esq.
> E-mail address:  mstamer@akingump.com

K&E 24948483

PHIL1 2761469v.1

After the Effective Date, the Debtors may, in their sole discretion, notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

G.      Entire Agreement

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

H.      Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Debtors' notice, claims and balloting agent at http://www.bmcgroup.com/conexant or the Bankruptcy Court's website at www.deb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.      Severability of Plan Provisions

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) non-severable and mutually dependent.

J.      Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale and purchase of Securities offered and sold under the Plan and any previous plan and, therefore, no such parties, individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale or purchase of the Securities offered and sold under the Plan or any previous plan.

K.      Closing of Chapter 11 Cases

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases.

K&E 24948483

PHIL1 2761469v.1

L.       *Conflicts*

        Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Confirmation Order shall govern and control.

*[Remainder of page intentionally left blank.]*

K&E 24948483

PHIL1 2761469v.1

Dated: April 19, 2013
      Wilmington, Delaware

CONEXANT SYSTEMS, INC., on behalf of itself and each of the other Debtors

By:      */s/ Sailesh Chittipeddi*
Name:   Sailesh Chittipeddi
Title:    President and Chief Executive Officer

COUNSEL:

*/s/ Domenic E. Pacitti*
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801-3062
Telephone:     (302) 426-1189
Facsimile:     (302) 426-9193

- and –

Morton Branzburg (admitted *pro hac vice*)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:     (215) 569-2700
Facsimile:     (215) 568-6603

- and -

Paul M. Basta (admitted *pro hac vice*)
Joshua A. Sussberg (admitted *pro hac vice*)
Christopher T. Greco (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

*Co-Counsel to the Debtors and Debtors in Possession*